Lesser **LINDENBAUM**, et al.

v.

**CITY OF PHILADELPHIA**, et al.

Civ. A. No. 83–984.

United States District Court,
E.D. Pennsylvania.

April 18, 1984.

---

Steven M. Coren, Fran-Linda Kobel, Kittredge, Kaufman & Donley, Philadelphia, Pa., for plaintiffs.

Pamela L. Perry, Chief Asst. City Sol., Philadelphia, Pa., for defendants.

## OPINION

LOUIS H. POLLAK, District Judge.

On February 5, 1981, the Philadelphia City Council enacted Bill 474 which reads as follows:

SECTION 1. Section 129 of the Retirement System Ordinance is hereby amended by adding a new Subsection 129(c) to read as follows:

§ 129. Minimum Pensions for Full-Time, Non-Uniformed Employees And Their Beneficiaries.

(c) All retired members of District Council 33 who, on July 1, 1980, have been retired for five (5) or more years and who had fifteen (15) or more years of credited service with the Municipal Retirement System at the time of retirement, shall receive an increase in monthly pension benefits of 8%.

This ordinance shall be effective July 1, 1980.

On May 6, 1982, the Philadelphia City Council enacted Bill 625A which reads as follows:

SECTION 1. Section 129 of the Retirement System Ordinance is hereby amended by adding a new Subsection 129(d) to read as follows:

§ 129. Minimum Pensions for Full-Time, Non-Uniformed Employees And Their Beneficiaries.

(d) All retired members, [not already included under § 129(c)] who were in non-represented classes of employment, comprising management level employees above the second-level of supervision and confidential employees, or who were in classes of employment prohibited from union representation at the time of their retirement, who, on July 1, 1980, had been retired for five (5) or more years and who had fifteen (15) or more years of credited service with the Municipal Retirement System at the time of retirement, shall receive an increase in monthly pension benefits of 8%.

This ordinance shall be effective July 1, 1980.

Plaintiffs, seven retired city employees who had been retired for more than five years as of July 1, 1980, and who had fifteen or more years of credited service with the Municipal Retirement System at the time of their retirement but who have not received the eight percent increase in pension benefits, have brought this action on behalf of themselves and all other similarly-situated individuals seeking declaratory and injunctive relief as well as damages. The complaint alleges claims under 42 U.S.C. § 1983; the United States Constitution, in particular, the protections of speech, association, due process and equal protection found in the First and Fourteenth Amendments; the Pennsylvania Constitution; and the Pennsylvania Public Employee Relations Act (PERA), Pa.Stat. Ann. tit. 43, §§ 1101.101 to .2301 (Purdon's Pamphlet 1983), in particular, §§ 1101.401 and 1101.1201 thereof.

Although plaintiffs have brought this suit as a class action, a class has not yet been certified. The matter is now before me on defendants' motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

It is important to note that the plaintiffs currently named in the complaint fall into two distinct groups. The challenges raised by each of these two groups of plaintiffs are similar but they have important differences. Thus, the two groups of plaintiffs will be discussed separately in this Opinion.

The first group of plaintiffs consists of Lesser Lindenbaum, Sadye R. Serody, Mary Knodle and Elizabeth Shuman (hereinafter referred to as the "Lindenbaum plaintiffs."). They were all city employees who "were in employment positions represented by District Council 33, although said plaintiffs elected not to be members of said Union." Complaint at ¶ 29. These plaintiffs' claims focus upon Bill 474 which granted the eight percent pension increase to members of District Council 33. These plaintiffs claim that they are indistinguishable from those who were awarded the increased pension benefits except for the fact that they did not join District Council 33. They assert that the City cannot constitutionally distinguish between persons on this basis.

The second group of plaintiffs consists of Louis Kaplan, Louis S. Gansky and Albert Accooe (hereinafter referred to as the "Kaplan plaintiffs"). They allege that they "were in employment positions which were not represented by a union, and which were prohibited from union representation." Complaint at ¶ 34. These plaintiffs' claims focus upon Bill 625A. They argue that, by the terms of the ordinance, they qualify for the eight percent pension increase therein provided. They argue in the alternative that if the ordinance does not cover them it is unconstitutional.

Defendants, the City of Philadelphia, the City Council of Philadelphia, the Board of Pensions and Retirement of the City of Philadelphia, and the former Mayor of Philadelphia, William J. Green, have moved to dismiss the complaint as to all plaintiffs and all counts. The motion to dismiss argues that the complaint fails to state any valid federal claims. In addition, the motion asserts that the pendent state law claims should be dismissed if no federal claims survive this motion and that, without regard to the viability of the federal claims, the state law claim under PERA should fail.

Since the Lindenbaum and Kaplan plaintiffs have advanced somewhat different claims, I will review the issues raised by the motion to dismiss separately for each of the two groups of plaintiffs.

## THE LINDENBAUM PLAINTIFFS

### 1) *Freedom of Speech* [1]

In the "second claim for relief" in the complaint, plaintiffs allege that defendants have deprived them of "the right to freedom of speech as guaranteed by the First and Fourteenth Amendments to the Constitution." Complaint at ¶ 45(a). There are no allegations in the complaint which identify the speech interest in question or explain how that interest has been infringed. These ordinances do not in terms regulate speech and there is no suggestion in the complaint or the response to the present motion that the ordinances were in some manner intended to affect speech.

Defendants' motion to dismiss specifically denies that the ordinances infringe plaintiffs' freedom of speech and plaintiffs have not taken issue with this denial in brief or on argument.[2] Accordingly, plaintiffs' freedom of speech claim will be dismissed.

### 2) *Freedom of Association*

[1] Defendants recognize that although the Constitution does not explicitly protect freedom of association, the Supreme Court has identified an implicit constitutional right of association and a corollary right not to associate. *See e.g., Abood v. Detroit Board of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977); *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). *See generally* Gaebler, "First Amendment Protection Against Government Compelled Expression and Association," 23 *B.C.L.Rev.* 995 (1982); Raggi, "An Independent Right to Freedom of Association," 12 *Harv.C.R.—C.L.L.Rev.* 799 (1977); Note, "Constitutional Law—The Constitutional Right of Nonassociation—*Abood v. Detroit Board of Education,*" 14

---

**1.** The plaintiffs' "first claim for relief" alleges violation of 42 U.S.C. § 1983. Their "second claim for relief" alleges violations of specific provisions of the United States Constitution. None of the parties has suggested that the § 1983 claim involves violations of constitutional rights other than those identified in the "second claim for relief." Therefore, I will assume that the § 1983 claims arise from the constitutional violations enumerated in the "second claim for relief." Of course, to the extent that plaintiffs have stated viable claims under § 1983, there is no need to imply a remedy directly under the Constitution for the same injuries. *E.g., DiGiovanni v. City of Philadelphia,* 531 F.Supp. 141, 144 (E.D.Pa.1982). Consequently, I will discuss plaintiffs' constitutional claims only once.

**2.** The only First Amendment interest which plaintiffs have identified in their brief in opposition to the present motion is the interest in freedom of association.

*Wake Forest L.Rev.* 663 (1978). The Lindenbaum plaintiffs allege that Bill 474 violates their right not to associate with a union by denying them benefits because of the decision which each of them made not to join District Council 33.[3]

■ The present motion to dismiss argues that the associational interests identified by the Lindenbaum plaintiffs are not constitutionally protected. Defendants' argument in support of this position is not presented with great clarity. Thus, at times it appears that defendants are suggesting that the rights of association and non-association are not constitutionally protected unless the association in question is involved in activities which are "intertwined with the explicit guarantees under the First Amendment." Reply at 4. This form of the argument apparently would not allow plaintiffs to state a claim under the First Amendment unless the association in question is in some way linked to expression, petition, worship or assembly—the only rights explicitly identified in the First Amendment. At other points in defendants' motion, it appears that defendants are suggesting that plaintiffs' rights of association and non-association are not implicated unless the infringement of these rights also infringes the right of speech, press, worship, assembly and/or petition. In order for plaintiffs to state a viable freedom of association claim under this form of defendants' argument, plaintiffs would be required to show that the burden on association either directly or indirectly burdened one of these explicit First Amendment rights.

Although this formulation of defendant's position has some superficial logic, it is not supported by the relevant Supreme Court precedents and does not offer supportable ground for dismissal of plaintiffs' associational claims under Rule 12(b)(6). If an associational interest deserves constitutional protection only when rights of expression, assembly, worship or petition are also affected, the constitutional claim could just as easily be predicated upon the burden upon the explicit constitutional right as upon the burden on association. Thus, defendants' position assumes that the Supreme Court's repeated recognition of distinct rights of association and non-association has been superfluous. It is not, however, ever, the Supreme Court's practice to fashion new labels for existing constitutional rights or to create new constitutional rights which are wholly redundant of long-established rights.

Furthermore, the Supreme Court has recognized that association is itself a form of expression. *See, e.g., Griswold v. Connecticut,* 381 U.S. 479, 483, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965). The decision to affiliate oneself with a particular group carries with it the willingness to be associated with the principles and purposes for which that group stands. Thus, even if it were possible to state that the Supreme Court's recognition of the right of association only extends to instances in which the infringement of associational interests also involves an infringement of rights explicitly identified in the Constitution, it would be impossible to divorce burdens on association from burdens upon explicit First Amendment rights: Infringement of the right of association necessarily involves infringement of the right of expression.

Defendants' first argument with respect to plaintiffs' associational claims—that the First Amendment is not implicated unless the association in question is in some manner involved in protected speech, assembly, worship or petition—is not, as a general matter, as clearly at odds with constitutional precedent as the argument just addressed. However, it is evident in the present case that the associational interest in question is one which is constitutionally protected. Although the right of association is most commonly conceived of in terms of political associations, the Supreme Court and other federal courts have recognized that economic speech and associations are not excluded from the guarantees

---

**3.** District Council 33 seems to be the only union representing city employees in the job classifications held by the Lindenbaum plaintiffs at the time they retired.

of the First Amendment. *E.g., Friedman v. Rogers*, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979); *Abood v. Detroit Board of Education, supra; Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Thomas v. Collins*, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945); *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. National Right to Work Legal Defense and Educational Foundation*, 590 F.2d 1139, 1148 (D.C.Cir.1978); *Jensen v. Farrell Lines, Inc.*, 477 F.Supp. 335, 354 (S.D.N.Y.1979); *O'Brien v. Leidinger*, 452 F.Supp. 720, 724 (E.D.Vir.1978).

Furthermore, the Supreme Court has recognized that First Amendment interests are necessarily called into question in the decision not to join a union. This is true not only for an employee's decision not to take part in the political activities of a union but also in her decision not to associate with the collective bargaining activities of a union. Some of these First Amendment interests were identified by Justice Stewart speaking for the majority in *Abood, supra* 431 U.S. at 222, 97 S.Ct. at 1793:

> To compel employees financially to support their collective-bargaining representative has an impact upon their First Amendment interests. An employee may very well have ideological objections to a wide variety of activities undertaken by the union in its role as exclusive representative. His moral or religious views about the desirability of abortion may not square with the union's policy in negotiating a medical benefits plan. One individual might disagree with a union's policy of negotiating limits on the right to strike, believing that to be the road to serfdom for the working class, while another might have economic or political objections to unionism itself. An em-

ployee might object to the union's wage policy because it violates guidelines designed to limit inflation, or might object to the union's seeking a clause in the collective-bargaining agreement proscribing racial discrimination. The examples could be multiplied. To be required to help finance the union as a collective-bargaining agent might well be thought, therefore, to interfere in some way with an employee's freedom to associate for the advancement of ideas, or to refrain from doing so, as he sees fit.

Defendants' argument for dismissal of the freedom of association claims in this action rests upon an erroneous interpretation of *Abood*. Defendants contend that *Abood* and similar cases have held that compelled payment of dues or requires membership in a union is not constitutionally protected when the association which is compelled is solely with the collective bargaining activities of the union and that First Amendment interests are only implicated when the association which is compelled is with the political or other activities of the union. However, *Abood* and cases which have followed it make clear that First Amendment interests are implicated whenever association with a union is compelled, but that, when the compelled association is limited to the payment of dues solely to support collective bargaining from which the nonunion employee also benefits, the interference with First Amendment interests is constitutionally permissible.[4]

> But the judgment clearly made in *Hanson* and *Street* is that such interference as exists is constitutionally justified by the legislative assessment of the important contribution of the union shop to the system of labor relations established by Congress.

*Abood, supra* at 222, 97 S.Ct. at 1793: *See e.g., Galda v. Gloustein*, 686 F.2d 159, 163–64 (3d Cir.1982). *See also Gaebler,*

**4.** It should also be noted that, in the present case, the plaintiffs apparently had no option to associate themselves with the union solely for purposes of collective bargaining. The eight percent pension increase was only provided to persons who had become union members and were associated with the political and social aspects of the union as well as the collective bargaining activities.

*supra* at 1000; Note, *"Abood v. Detroit Board of Education:* Association as a First Amendment Right—The Protection of the Nonmember Employee in the Context of Public Sector Unionism." 1977 *Utah L.Rev.* 487.

Thus, the plaintiffs' allegations properly state a claim under the right of association found in the First Amendment and the corollary freedom not to associate. Contrary to the arguments made in defendants' motion to dismiss this claim, these First Amendment rights are implicated by government action which denies benefits on the basis of an individual's decision not to join a union.[5] Accordingly, defendants' motion to dismiss must be denied with reference to this claim.

This determination that plaintiffs have stated a claim sufficient to withstand the present motion to dismiss should not be read to reflect any view on the likely resolution of this case upon further development of the record. The sole contention raised by this portion of the motion to dismiss was that the City's denial of certain benefits to plaintiffs on the basis of their decision not to join District Council 33 did not implicate First Amendment associational interests. I have determined that some burden upon plaintiffs' First Amendment interests has been properly alleged. It is now appropriate to allow the parties an opportunity to develop the record in this action. Once such a record is compiled, there will be a basis for addressing the separate question whether the burden upon associational interests imposed by Bill 474 is justified by the government interests which underlay the passage of Bill 474.[6]

### 3) *Equal Protection*

The Lindenbaum plaintiffs' equal protection claim is substantially the same as the freedom of association claim. Plaintiffs allege that they are identical to persons who received increased pension benefits under Bill 474 except for the fact that they never joined District Council 33. Contending that past union membership is not a fact which justifies government in the giving or withholding of benefits, they argue that Bill 474 runs afoul of the equal protection clause.

Defendants have moved to dismiss this claim on the ground that the ordinance in question does not involve "suspect classifications" or "fundamental rights." Therefore, defendants argue, Bill 474 need only be "rationally related to a legitimate state interest" to survive constitutional scrutiny. Defendants' motion to dismiss reviews the reasons for the enactment of Bill 474 and argues that these reflect governmental interests clearly sufficient to satisfy the "rational relationship" test of equal protection analysis. The primary rationale cited by

5. Defendants do not suggest that the decision to deny increased pension benefits to nonunion retirees is somehow distinguishable from the circumstances in *Abood* in which government employment was denied to those who sought to avoid association with the union. It is well established that government may not deny a benefit such as a job or financial assistance for a reason which infringes a person's constitutionally protected rights. "For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited." *Perry v. Sinderman,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). *See also Healy v. James,* 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972); *Bates v. City of Little Rock,* 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); *NAACP v. Alabama ex rel. Patterson, supra.*

Defendants' characterization of the increase in pension benefits as "gratuitous" is of no con-stitutional relevance. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss at 6. The "right/privilege" distinction has long been rejected as a basis for constitutional decisionmaking. *Sugarman v. Dougall,* 413 U.S. 634, 644, 93 S.Ct. 2842, 2848, 37 L.Ed.2d 853 (1973).

6. In the portion of the present motion which is directed at plaintiff's freedom of association claims defendants do not discuss the government interests which underlay the passage of Bill 474. The only time that government interests are identified in this motion is with reference to plaintiffs' equal protection claim. In that portion of the motion, defendants argue that the ordinance is rationally related to the legitimate government interest in preserving harmony between the City and District Council 33.

defendants for enactment of Bill 474 was to assure that future collective bargaining negotiations with District Council 33 would proceed smoothly.

■ As a general matter, governmental distinctions between persons similarly situated are constitutionally permissible if they are shown to be reasonably grounded in some legitimate governmental policy. But certain distinctions—those based on a "suspect classification" or substantially impinging upon "fundamental rights"—cannot pass constitutional muster unless they satisfy substantially stricter scrutiny than mere rationality.[7] *See, e.g., United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 174, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980); *Delaware River Basin Commission v. Bucks County Water and Sewer Authority,* 641 F.2d 1087 (3d Cir.1981). In such cases, there must be a compelling state interest which justifies the differential government treatment.

■ In the present action, the parties are in agreement that Bill 474 does not discriminate on the basis of a "suspect classification." Furthermore, it is undisputed that pension benefits, like most government benefits, are not "fundamental rights." *E.g., Muzquiz v. City of San Antonio,* 520 F.2d 993, 1001 (5th Cir.1975). Plaintiffs' sole argument for application of a standard of scrutiny greater than the traditional "rational basis" test is that the distinction created by Bill 474 infringes the "fundamental interest" in freedom of association. In response to plaintiffs' identification of this "fundamental interest," defendants refer back to their argument that, as a matter of law, no First Amendment interests are affected by the ordinance in question. Because I have already determined that plaintiffs' allegations are sufficient to implicate plaintiffs' right not to associate under the First Amendment, this argument of the defendants must also fail.

However, even though plaintiffs' allegations suffice to bring their equal protection claim within the "fundamental interest" strand of equal protection analysis, this does not necessarily mandate the application of the "compelling state interest" test to Bill 474. The Supreme Court has noted that some degree of impact upon fundamental rights may be allowed under the equal protection clause. In *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 257, 94 S.Ct. 1076, 1081, 39 L.Ed.2d 306 (1974), Justice Marshall, speaking for the majority, noted that "[t]he amount of impact required to give rise to the compelling-state-interest test was not made clear" in earlier "fundamental interest" equal protection decisions such as *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Thus, the Court has held that it is necessary first to consider the degree of infringement of the "fundamental interest" in question to determine whether application of the compelling state interest test is appropriate in a particular case. *Memorial Hospital, supra* 415 U.S. at 257–58, 94 S.Ct. at 1081–82.

In the present action, the parties have not yet addressed the issue of how significantly Bill 474 affects the fundamental right of association. Since the parties have not considered this issue in the present motion and some development of the record may be necessary before this issue can be properly evaluated, I conclude that it is inappropriate for me to address this issue at this time. Thus, although I do not reach one of the questions presented in the portion of defendants' motion which discusses plaintiffs' equal protection claims—whether Bill 474 is rationally related to a legitimate state objective—I do so not because I have determined that, as plaintiffs contend, the compelling state interest test must be applied to this legislation, but because the parties have not yet discussed how substantial a burden Bill 474 imposes upon

7. The compelling state interest test is not applied to all government actions which *affect* fundamental interests. Strict scrutiny is only appropriate when the government action in question substantially burdens fundamental rights. *Memorial Hospital v. Maricopa County, infra* 415 U.S. at 257, 94 S.Ct. at 1081.

associational rights.[8] Accordingly, defendants' motion to dismiss will be denied with respect to the Lindenbaum plaintiffs' equal protection claim as well.[9]

## THE KAPLAN PLAINTIFFS

The Kaplan plaintiffs' claims focus upon Bill 625A. That ordinance granted an eight percent pension increase to persons who had been retired for more than five years as of July 1, 1980 and who had at least fifteen years of credited service with the Municipal Retirement System at the time of their retirement. However, Bill 625A granted the pension increase solely to persons not covered by Bill 474 who were in "non-represented classes of employment, comprising management level employees above the second-level of supervision and confidential employees, or who were in classes of employment prohibited from un-

ion representation at the time of their retirement."

■ In the complaint, the Kaplan plaintiffs allege that they were in classes of employment which were not represented by a union and which were "prohibited from union representation." They also assert that in all other respects they would qualify for a pension increase under Bill 625A.

To date, the City has interpreted this ordinance in a manner which excludes the Kaplan plaintiffs from its coverage. The Kaplan plaintiffs argue that such an interpretation is arbitrary and without a rational basis. In the alternative, these plaintiffs allege that if Bill 625A is currently being properly interpreted by the City, the ordinance is unconstitutional because it discriminates between individuals on the basis

**8.** This conclusion is supported by the fact that the issue of the degree of infringement of the "fundamental interest" in freedom of association will necessarily be considered in the course of the First Amendment analysis of whether the burden upon associational rights is justified by a sufficient state interest. Since that First Amendment analysis must await further development of the record in this action, it is appropriate to defer full consideration of the related equal protection analysis until such time as the question of the proper balance under the First Amendment is also properly presented.

At this point in the development of this action, it is difficult to distinguish plaintiffs' First Amendment claim from their equal protection claim for purposes of constitutional analysis. Both claims allege that granting benefits to one group while denying those same benefits to another group violates plaintiffs' constitutional rights. The only reason for applying a test involving greater scrutiny than the traditional "rational basis" test for purposes of the equal protection challenge is that, arguably, the distinction between members and non-members of the union is constitutionally suspect. On the other hand the only basis for challenging the ordinance as a violation of plaintiffs' freedom not to associate is that it grants benefits to some and not to others—a complaint which is normally presented in the form of an equal protection challenge. In fact, in opposition to the motion to dismiss with respect to the equal protection claim in this action, plaintiffs have relied upon Supreme Court precedent which did not involve equal protection claims but which, instead, focused upon the burden on First Amendment interests imposed by the denial of government benefits to persons who had exer-

cised their First Amendment rights. *Perry v. Sinderman, supra; Healy v. James, supra.* Due to the obvious overlap between these two constitutional claims, I question whether the analysis of Bill 474's constitutionality should vary according to counsel's formulation of the constitutional challenge. However, a determination of the similarities or differences between the constitutional analysis of plaintiffs' First Amendment and equal protection claims should await full presentations on the issue by the parties.

**9.** Defendants' motion to dismiss also explicitly argues that the Lindenbaum plaintiffs' claims under the due process clause of the Fourteenth Amendment should be dismissed. Plaintiffs' response to this motion does not directly address this argument. To the extent that the due process claim is equivalent to the equal protection claim, my non-dismissal of the equal protection claim also operates to preserve the due process claim. *See generally Thompson v. Gallagher,* 489 F.2d 443, 447 (5th Cir.1974). But, neither the allegations of the complaint nor the documents and oral argument submitted by plaintiffs in the course of their response to the motion to dismiss have explained what, if any, aspects of the due process claim are separate from the equal protection claim brought by the Lindenbaum plaintiffs. As a result, during future consideration of this action, it will be assumed that the Lindenbaum plaintiffs' due process claim duplicates their equal protection claim. In order to simplify future discussions of the issues presented in this action, the equal protection/due process claim asserted by the Lindenbaum plaintiffs will be referred to as their "equal protection" claim.

of those individuals' constitutionally protected decision not to join a union.[10]

Defendants have moved for dismissal of these claims as well. The only portion of defendants' motion which is specifically directed at the claims of the Kaplan plaintiffs is a discussion at pages 15 through 17 of the memorandum of law in support of the motion to dismiss. In that portion of the memorandum, defendants argue that the interpretation of Bill 625A currently followed by the City is not arbitrary or irrational. It may be that defendants assumed that their arguments for dismissal of the First Amendment and equal protection claims of the Lindenbaum plaintiffs applied with equal force to the parallel claims of the Kaplan plaintiffs. However, to whatever extent defendants' motion to dismiss directly challenges the viability of the Kaplan plaintiffs' constitutional claims, I conclude that it is inappropriate for a federal court to consider those constitutional claims at the present time. I have determined that, given the present position of plaintiffs' claims and defendants' response thereto, the proper course is to abstain pursuant to *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

The principles enunciated in *Pullman* have been relied upon and refined during the more than forty years since Justice Frankfurter's opinion for a unanimous Court. In 1976, Justice Blackmun summarized the *Pullman* abstention doctrine as follows:

As we have held on numerous occasions, abstention is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary "which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem."

*Bellotti v. Baird*, 428 U.S. 132, 146–47, 96 S.Ct. 2857, 2866, 49 L.Ed.2d 844 (1976) (citations omitted).[11]

The federal constitutional claims raised by the Kaplan plaintiffs are excellent examples of the types of claims for which abstention is most appropriate. The Kaplan plaintiffs' constitutional claims need not be reached if Bill 625A is properly construed to include them in the class of retired city employees entitled to increased pension benefits. This aspect of Bill 625A has not been considered by the courts of the Commonwealth of Pennsylvania. Thus, if this ordinance may be interpreted to include the Kaplan plaintiffs within the class of persons entitled to a pension increase, the "necessity for federal constitutional adjudication" may be avoided.

Abstention is only appropriate in a case in which the question of state law which is the basis for the decision to abstain is both "unsettled," *Heritage Farms, Inc. v. Solebury Township*, 671 F.2d 743 (3d Cir.1982), and "fairly susceptible to an interpretation that would avoid the need for constitutional adjudication." 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4242 at 460 (1978). In the present case, the claims of

10. Assuming *arguendo* that the Kaplan plaintiffs were not prohibited from union representation, it is not clear from the facts now of record whether the Kaplan plaintiffs could have joined District Council 33 or whether the option they did not pursue was that of joining or forming another union. If they could have joined District Council 33 and did not, their claim would parallel that of the Lindenbaum plaintiffs. If they would not have had the option of joining District Council 33, the basis for the Kaplan plaintiffs' First Amendment associational claim has not yet been clearly presented.

11. In that same opinion, the Court noted that "abstention may be raised by court *sua sponte*." *Bellotti, supra* at 143 n. 10, 96 S.Ct. at 2864 n. 10.

This determination that the court may raise the issue of abstention without a motion from the parties is consistent with the policies which underlie the doctrine of abstention. Abstention in cases such as *Pullman* is justified by considerations of federalism and the "desire to preserve harmonious federal-state relations." 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4242 at 465 (1978). In addition, the doctrine allows the federal courts to avoid unnecessary federal constitutional questions. Both of these concerns are matters of significant interest to the court as an institution although they may not be of particular concern to the parties.

the Kaplan plaintiffs clearly fulfill these requirements.

The arguments in favor of and in opposition to a construction of Bill 625A which includes the Kaplan plaintiffs among the class of persons entitled to a pension increase can be summarized as follows. Defendants argue that a 1978 decision of the Pennsylvania Supreme Court, *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board,* 479 Pa. 440, 388 A.2d 736, held that employees in positions such as those occupied by the Kaplan plaintiffs could join a union. This decision was based upon the court's interpretation of the Pennsylvania Public Employee Relations Act (PERA). Defendants assert that the City has interpreted the phrase "prohibited from union representation" to refer to employees who, under current construction of PERA, are not entitled to form a union or join a union. Defendants conclude that such an interpretation is rational since it is grounded in the definitions established by a rational state legislative scheme.

Plaintiffs respond that the construction of Bill 625A which is currently relied upon is incorrect because the City looks to the current state of the law or, at least, the law at the time that Bill 625A was enacted. They argue that the term "prohibited from union representation" must be construed with reference to the state of the law at the time that the employees in question retired. The Kaplan plaintiffs note that the state court decision on which the City relies for its interpretation of "prohibited from union representation" was handed down at least three years after any of the individuals arguably entitled to a pension increase under Bill 625A had retired. Thus, at the time of their retirement, the Kaplan plaintiffs contend, they were effectively "prohibited" from joining a union because it was commonly believed that persons employed in their job classifications were not allowed to unionize under PERA.

Since no court has yet resolved this dispute as to the proper interpretation of the language "prohibited from union representation" in Bill 625A, and since both sides to this dispute have plausible arguments for their interpretation of the ordinance, this is, within the intendment of *Pullman,* both an "unsettled" area of state law and a matter which is "fairly susceptible" to a construction which would avoid the constitutional issues raised by these plaintiffs.[12]

Accordingly, I will abstain from resolving the claims of the Kaplan plaintiffs until such time as Bill 625A has been construed by the courts of Pennsylvania. However, this ruling does not warrant dismissal of the Kaplan plaintiffs' claims. The decision to abstain in *Pullman*-type cases "does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise." *Harrison v. National Association for the Advancement of Colored People,* 360 U.S. 167, 175, 79 S.Ct. 1025, 1029, 3 L.Ed.2d 1152 (1959). Thus, in this situation, it is appropriate for the court to stay the proceedings which are subject to abstention and retain jurisdiction pending the proceedings in the state courts. *American Trial Lawyers Association v. New Jersey Supreme Court,* 409 U.S. 467, 93 S.Ct. 627, 34 L.Ed.2d 651 (1973); *Lake Carriers' Association v. MacMullan,* 406

---

**12.** When considering whether abstention is the appropriate course of action, a federal court should also evaluate the effect which the delay necessitated by abstention may have on the parties or the issues. In the present case, I conclude that delay will not greatly prejudice the parties. This is not a situation in which the plaintiffs are in immediate jeopardy, *see Halderman v. Pennhurst State School & Hospital,* 673 F.2d 647, 659 (3d Cir.1982), or in which plaintiffs are being denied those governmental benefits necessary to basic subsistence. *See generally, Memorial Hospital v. Maricopa County, supra.* In addition, the Kaplan plaintiffs allege no statutory federal claims which would either be delayed by abstention or require these plaintiffs to proceed on a portion of their claims while the remainder of their claims await state court determinations. Finally, the claims of the Lindenbaum plaintiffs may proceed without prejudicing the Kaplan plaintiffs' ability to present their constitutional claims, if necessary, after the state courts have acted on the issue which requires abstention. Since the constitutional claims of each set of plaintiffs are distinct, any decision made with reference to the Lindenbaum plaintiffs will not bind the Kaplan plaintiffs.

U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); *Insurance Federation of Pennsylvania v. Supreme Court of Pennsylvania,* 669 F.2d 112 (3d Cir.1982); *Williams v. Red Bank Board of Education,* 662 F.2d 1008 (3d Cir.1981). Therefore, I will stay those portions of this action which relate to the claims of the Kaplan plaintiffs.

## STATE CLAIMS

■ Defendants' only argument for dismissal of the pendent state claims under the Pennsylvania Constitution is that if this court dismisses all of the federal claims, this court should not exercise its pendent jurisdiction with regard to the state claims. Since I have determined that some of the federal claims are viable, I have no reason to consider this argument.

■ Plaintiffs also assert claims under PERA, in particular, §§ 1101.401 and 1101.-1201 of the Act. Plaintiffs have provided me with little assistance in the course of the development of this motion as to the specific nature of their claim under PERA. However, it appears that they claim that the City's actions in bargaining for this benefit exclusively for union members constituted an unfair labor practice because it interfered with plaintiffs' rights under PERA, § 1101.1201(a)(1) "to refrain from any or all [union] activities," § 1101.401, and because it otherwise "discriminat[ed] in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employee organization." § 1101.-1201(a)(3). Defendants argue that plaintiffs cannot bring such claims because only current employees—not retired employees—are protected by PERA. Plaintiffs do not respond to this argument in their brief in response to the motion to dismiss and did not comment on it at oral argument. Although this is apparently an unresolved issue of state law, it is not necessary and arguably beyond my power to decide this question at this time.

Both PERA and the decisions of the courts of the Commonwealth of Pennsylvania make it clear that "if a party directly seeks redress of conduct which arguably constitutes one of the unfair labor practices listed in Article XII (Section 1201) of the PERA, 43 P.S. § 1101.1201 (Supp.1976), jurisdiction to determine whether an unfair labor practice has indeed occurred and, if so, to prevent a party from continuing the practice is in the PLRB [Pennsylvania Labor Relations Board] and nowhere else." *Hollinger v. Department of Public Welfare,* 469 Pa. 358, 365 A.2d 1245 (1976). Pa.Stat.Ann. tit. 43, § 1101.1301 (Supp. 1982). As noted by the Commonwealth Court of Pennsylvania, speaking through Judge MacPhail in *Cook v. Commonwealth,* 61 Pa.Commw. 152, 432 A.2d 1139 (1981),

> the legislature in enacting PERA was making a conscious effort to remove labor disputes from the judicial arena until all other possibilities for the resolution of the dispute have been exhausted. There are no facts recited in the instant case which would require this Court to usurp the exclusive jurisdiction vested in the Pennsylvania Labor Relations Board by the legislature for the determination of unfair labor practice charges.

432 A.2d at 1141.

Accordingly, I will dismiss plaintiffs' claim under PERA due to the exclusive jurisdiction of the Pennsylvania Labor Relations Board of such claims.

The rulings made in this Opinion will be reflected in an accompanying Order.