620 A.2d 71

**TOWNSHIP OF UPPER SAUCON, Petitioner,**

**v.**

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 1992.

Decided Jan. 7, 1993.

Ralph H. Colflesh, for petitioner.

James L. Crawford and Peter Lassi, for respondent.

Anthony C. Busillo, II, for intervenor.

Before COLINS, and FRIEDMAN, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

The Township of Upper Saucon (Township) petitions for review of a final order of the Pennsylvania Labor Relations Board (PLRB) finding that the Township committed unfair labor practices under Section 6(1)(a) and (e) of the Pennsylvania Labor Relations Act (PLRA),[1] 43 P.S. § 211.6(1)(a) and (e), by unilaterally altering the work schedule of the Upper Saucon Township Police Association (Association), the collective bargaining unit, without first fulfilling its bargaining obligations under Act 111.[2]

1. Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§ 211.1–211.13.

2. The Act of June 24, 1968, P.L. 237, 43 P.S. § 217.1–217.10, popularly referred to as Act 111.

The essential facts are largely undisputed and can be summarized briefly as follows:

In March, 1991, the Township implemented a new steady shift system for its police officers, known as a "5–2" schedule. Officers work five consecutive days or nights and are then off for two days. Individual officers select their combination of days off based on seniority and the assignments are permanent. For some officers, shift selections (*e.g.*, second or third shift) are also permanent and the new system does not provide for shift differentials. The new system does not increase the number of hours per day, week or year that an officer works.

For approximately 10 years before the shift system change, Township police worked a rotating "7–2", "7–2", "6–4" schedule: officers worked seven day time shifts (first shift), followed by two days off; seven middle-hour shifts (second shift), followed by two days off; and six night shifts (third shift), followed by four days off. Under the rotating shift schedule, officers received 13 days off per year (known as "Kelly" days) so that their yearly hours of work did not exceed 2,080. Each officer received Saturday off every fourth week.

The management rights clause of the parties' collective bargaining agreement provides:

> The management of the Department and the direction of the working forces is vested exclusively in the Township and the Township shall continue to have all rights customarily reserved to Management, including ... the right to schedule hours or require overtime work; and the right to establish or continue overall, reasonable policies, practices, procedures, rules and regulations pertaining to the performance, discipline, appearance, conduct and General Operation of the Department[.]

(1990–1992 Collective Bargaining Agreement at 5.) The agreement also provides that "any of the rights, power or authority the Township had prior to the signing of this Agreement are retained by the Township, except those specifically abridged, granted or delegated to others or modified by this Agreement." (*Id.*)

Assuming that the Collective Bargaining Agreement authorized it to change shift systems, the Township did not negotiate the change with the Association, but implemented it unilaterally. The Association filed charges of unfair labor practices, alleging that the Township was obligated to negotiate the schedule change as a mandatory subject of bargaining under Act 111.

■ In a proposed Decision and Order (PDO) issued November 25, 1991, the hearing examiner agreed with the Association that the shift system change was a mandatory subject of bargaining and found that the right to bargain was not waived in the parties' Collective Bargaining Agreement. The Township timely filed exceptions to the PDO and in a Final Order issued February 12, 1992, the PLRB dismissed the exceptions, making the PDO absolute and final. The Township's petition for review to this court followed.[3]

The Township presents three issues for this court's consideration: (1) Whether the PLRB was correct in concluding that the change in shift systems was a mandatory subject of bargaining under Act 111; (2) whether the Township can be guilty of an unfair labor practice when it acts under authority it has a sound basis to believe is conferred by the parties' collective bargaining agreement (the contractual privilege defense); and (3) whether the Association waived its right to bargain over shift system changes.

■ With respect to the Township's second issue, the PLRB contends that the Township waived the contractual privilege argument by failing to raise it as an exception to the PDO. We agree. Contractual privilege is a separate affirmative defense and was not raised by implication or preserved by the filing of the Township's other exceptions. This court is

3. Under Section 704 of the Administrative Agency Law, this court's scope of review is limited to determining whether constitutional rights were violated, errors of law were committed, and findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704. *Accord Philadelphia v. Pennsylvania Labor Relations Board,* 138 Pa.Commonwealth Ct. 113, 119 n. 7, 588 A.2d 67, 70 n. 7 (1991), *appeal denied,* 528 Pa. 632, 598 A.2d 285 (1991) (citing *Harbaugh v. Pennsylvania Labor Relations Board,* 107 Pa.Commonwealth Ct. 406, 528 A.2d 1024 (1987)).

precluded from considering issues not properly preserved for appeal. *See* 2 Pa.C.S. § 703 ("[a] party may not raise upon appeal any other question not raised before the agency ... unless allowed by the court upon due cause shown.") Accordingly, we will not consider the merits of the Township's contractual privilege argument.

## *I. Mandatory Subjects of Bargaining.*

The Township's first contention is that the PLRB erred in concluding that the shift system change at issue was a mandatory subject of bargaining under Act 111. In support of this contention, the Township argues that the hearing examiner and the PLRB misapplied the test used to determine whether an issue is a mandatory subject of bargaining under Act 111. It is undisputed that the "rational relationship" test is applicable and that an issue is deemed bargainable if it bears a rational relationship to employees' duties. *See e.g., City of Clairton v. Pennsylvania Labor Relations Board,* 107 Pa.Commonwealth Ct. 561, 528 A.2d 1048 (1987).

After reviewing the PDO and the PLRB's Final Order, we are satisfied that the correct test was applied.[4] However, the Township takes the position that the rational relationship test requires a balancing of its managerial purposes and objectives in order to determine whether the subject at issue is rationally related to employees' duties. This position was rejected in *City of Clairton* and we reject it again, now.

In *City of Clairton,* the public employer argued that under *Pennsylvania Labor Relations Board v. State College Area School District,* 461 Pa. 494, 337 A.2d 262 (1975), the PLRB should have weighed bargainable and non-bargainable interests as defined under Sections 701 and 702 of the Public Employe Relations Act[5] (PERA), 43 P.S. §§ 1101.701 and 1101.702, in order to determine what acts came within the scope of its managerial prerogative. We recognized there, as we recognize here, that "[t]he balancing of considerations

4. *See, e.g.,* PDO at 3–4 and Final Order at 3.
5. Act of July 23, 1970, P.L. 563, 43 P.S. §§ 1101.101–1101.2301.

under PERA as set forth in the *State College* case is not pertinent here ... inasmuch as this matter concerns police and fire personnel, and is consequently within the scope of [Act 111]." *City of Clairton* 107 Pa.Commonwealth Ct. at 564, 528 A.2d at 1049.

This is not to say that the public employer's objectives can be given no consideration. As was properly pointed out below, rejection of the PERA balancing test in the context of Act 111 cases does not mean that management objectives are wholly ignored. (PDO at 4–5; PLRB Final Order at 3.) *See, e.g., City of Philadelphia v. Pennsylvania Labor Relations Board,* 138 Pa.Commonwealth Ct. 113, 588 A.2d 67 (1991), *appeal denied* 528 Pa. 632, 598 A.2d 285 (1991). However, as the PDO aptly states, "a managerial policy concern must *substantially outweigh* any impact an issue will have on the employes for that issue to be deemed a managerial prerogative." (PDO at 5 (citing *City of Philadelphia*) (emphasis added).

█ It is clear from our review of the PDO and the Final Order that the hearing examiner and the PLRB concluded that officers' shift schedules are rationally related to their duties and that the Township's stated objectives do not outweigh the impact the schedule change would have. We find no error in this conclusion and find, further, that it is amply supported by the record. Accordingly, we will not reverse the PLRB's conclusion.

█ The Township also contends that the shift system change cannot be a mandatory subject of bargaining because it does not come within the scope of subjects identified in Section 1 of Act 111, 43 P.S. § 217.1.[6] In short, the Township argues, shift assignments and days off do not relate to "hours"

6. Under Section 1 of Act 111, "[p]olicemen ... employed by a political subdivision of the Commonwealth ... shall ... have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits...." 43 P.S. § 217.1.

or otherwise to "terms and conditions" of employment. We disagree.

The Township cites *Borough of Ambridge Appeal,* 53 Pa.Commonwealth Ct. 251, 417 A.2d 291 (1980) for the proposition that the term "hours" as used in Section 1 of Act 111 is limited in meaning to "the minimum number of weekly work hours, and the minimum distribution of those hours throughout the days of the week." *Id.* at 253, 417 A.2d at 292. A fair reading of *Ambridge,* however, belies the Township's interpretation. In that opinion, this court construed the term "hours" in the context of the limited issue before it: Whether an arbitrator's award fixing minimum weekly work hours and work days interfered with the public employer's managerial prerogatives. No where in the *Ambridge* opinion did this court limit the definition of the term "hours" as a mandatory subject of bargaining under Act 111.

In this case, it requires no stretching of definitions to see that shift schedule assignments relate closely to hours. In fact, shift assignments would seem to fall within the meaning of "minimum distribution of . . . hours throughout the days of the week." Therefore, we reject the Township's contention that the shift system change at issue here is not a mandatory subject of bargaining because it does not concern "hours" as that term is used in Act 111.

■ We likewise reject the Township's contention that the shift system change, affecting as it did the scheduling of days off, does not concern "terms and conditions of . . . employment." 43 P.S. § 217.1. Whether a given subject is "a term or condition of employment" or a matter of managerial prerogative should be determined in the first instance by the PLRB. *See, e.g., City of Harrisburg v. Capital City Lodge No. 12, Fraternal Order of Police,* 80 Pa.Commonwealth Ct. 193, 471 A.2d 166 (1984). In its Final Order, the PLRB stated:

As the hearing examiner noted, in this case there can be no doubt that the schedule change is rationally related to the police officers' duties. Furthermore, the Pennsylvania courts have cited with approval federal case law holding that changes in work schedules constitute changes in working

conditions and are therefore mandatorily negotiable. We likewise find that the change is the shift system in this case constituted a unilateral change in working conditions and accordingly affirm the hearing examiner's finding of an unfair practice.

(Final Order at 3 (citations omitted).) This is in accord with our discussion in *City of Harrisburg*, wherein we noted with approval cases decided under PERA and the National Labor Relations Act [7] which held that "matters having to do with 'break time,' indistinguishably similar to . . . days off scheduling . . ., have been held to be matters which must be subject to bargaining." *City of Harrisburg*, at 197, 471 A.2d at 168. Accordingly, we affirm the PLRB's determination that the shift system change was a mandatory subject of bargaining under Act 111.

## II. Waiver of the Right to Bargain.

■ Citing the managerial rights clause in the parties' current collective bargaining agreement, language used in the parties' previous agreements and the Association's failure to contest unilateral shift schedule changes in the past, the Township argues that the Association waived its right to bargain over changes in the shift system. Again, we must reject the Township's position.

To examine this question and, for the purpose of the clarity of this opinion, we repeat the management clause of the collective bargaining agreement.

The management of the Department and the direction of the working forces is vested exclusively in the Township and the Township shall continue to have all rights customarily reserved to Management, including . . . the right to schedule hours or require overtime work; and the right to establish or continue overall, reasonable policies, practices, procedures, rules and regulations pertaining to the performance, discipline, appearance, conduct and General Operation of the Department[.]

7. 29 U.S.C. §§ 151–169.

The only words in this clause which possibly could support a waiver are the words "the right to schedule hours." However, the PLRB specifically and cogently addressed this argument.

> This is not merely a case of the employer "scheduling" the hours of work but rather a case where the employer made a fundamental change in the very nature of the shift system for police officers, abolishing the system followed for at least ten years where all police officers uniformly worked rotating shifts with rotating days off and had a Saturday off every fourth week and implementing a steady shift system where police officers are required to choose certain shifts with certain days off (based on seniority) and Saturday is eliminated as a regular day off.

We agree with this statement and further hold as did the PLRB that broad language in a management rights clause will not support a waiver. As we held in *Commonwealth v. Pennsylvania Labor Relations Board,* 78 Pa.Commonwealth Ct. 419, 467 A.2d 1187 (1983), a PERA case but equally applicable in this instance, waiver of the right to bargain may only be found when the words show a clear and unmistakable waiver.

Accordingly, we affirm the decision of the PLRB.

## ORDER

AND NOW, this 7th day of January, 1993, the order of the Pennsylvania Labor Relations Board, dated February 12, 1992, case no. PF–C–91–42–E is affirmed.