621 A.2d 1184

**CITY OF BETHLEHEM, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 1992.

Decided Feb. 19, 1993.

Reargument Denied April 21, 1993.

Edward H. Feege, for petitioner.

James L. Crawford and Timothy Tietze, for respondent.

Anthony C. Busillo, II, for intervenor, Lodge No. 20 Fraternal Order of Police.

Before COLINS and FRIEDMAN, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

The City of Bethlehem (City) petitions for review of a final order of the Pennsylvania Labor Relations Board (PLRB) finding that the City committed unfair labor practices under Section 6(1)(a) and (e) of the Pennsylvania Labor Relations Act (PLRA),[1] 43 P.S. § 211:6(1)(a) and (e), by unilaterally removing work from the collective bargaining unit, Bethlehem Star Lodge No. 20, Fraternal Order of Police (FOP), without first fulfilling its bargaining obligations under Act 111.[2]

This dispute arises out of the City's decision to reorganize its communications center and implement General Order 16 without FOP membership assent. The communications center receives calls and dispatches units to investigate complaints, crimes, fires and accidents. Prior to General Order 16, the communications center was staffed by a desk sergeant and three civilian employees. In addition to "desk sergeant duties" (*e.g.*, cell block security, logging evidence and answering questions from the public), the desk sergeant was the dispatcher and supervised the civilian employees. A police captain was in overall charge of the communications center.

During 1989–1990, the City considered various ways of restructuring and modernizing the communications center. Early proposals would have utilized an entirely civilian staff with a civilian supervisor. Later proposals returned to a police captain supervisor in answer to FOP leadership concerns. All of the proposals would, for the most part, have removed the desk sergeant from communication center operations. Although none of the proposals were put before the FOP membership for approval, it is undisputed that the City discussed its proposals with FOP leadership throughout the planning process.

In late 1990 or early 1991, the City presented a revised proposal, under which a police captain would maintain control over the communications center and the desk sergeant would have some limited supervision over civilian employees and

1. Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. §§ 211.1–211.13.
2. The Act of June 24, 1968, P.L. 237, 43 P.S. § 217.1–217.10, popularly referred to as Act 111.

some limited involvement in operations. Despite leadership recommendation, the FOP membership rejected the revised proposal. No further meetings or discussions were conducted. On January 15, 1992, the City implemented the revised proposal, which became General Order 16. The desk sergeant no longer supervises civilian employees on a daily basis, no longer performs dispatching duties and performs "desk sergeant duties" exclusively.

The FOP filed a charge of unfair labor practices with the PLRB.[3] After a hearing held May 15, 1991, the hearing examiner issued a Proposed Decision and Order (PDO) finding that the City committed unfair labor practices by failing to bargain with the FOP. The parties timely filed exceptions to the PDO and on February 21, 1992, the PLRB issued its Final Order dismissing the exceptions and making the PDO final and absolute. The City's petition for review to this Court followed.[4]

The following issues are presented for this Court's consideration: (1) whether the City had an obligation to bargain with the FOP over the change in the desk sergeant's duties effected by General Order 16; and, if so, (2) whether the City fulfilled its bargaining obligations prior to unilateral imple-

3. The Specification of Charges in the FOP's Charge of Unfair Practices filed with the PLRB states in pertinent part:

The unilateral decision to transfer Bargaining Unit work to non-Bargaining Unit personnel without bargaining constitutes an unlawful transferring out or subcontracting of Bargaining Unit work and in addition it is ... averred that the decision to transfer out such work was a discriminatory action designed to deprive the [FOP] of Bargaining Unit positions.

It is the FOP's position that the supervisory control over the Communications Center is Bargaining Unit work and that the unilateral determination to transfer out such work to non-Bargaining Unit members constitutes a violation of Act 111 and the [PLRA]....

4. Under Section 704 of the Administrative Agency Law, this court's scope of review is limited to determining whether constitutional rights were violated, errors of law were committed, and findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704. *Accord Philadelphia v. Pennsylvania Labor Relations Board*, 138 Pa. Commonwealth Ct. 113, 119 n. 7, 588 A.2d 67, 70 n. 7 (1991), *appeal denied*, 528 Pa. 632, 598 A.2d 285 (1991) (citing *Harbaugh v. Pennsylvania Labor Relations Board*, 107 Pa. Commonwealth Ct. 406, 528 A.2d 1024 (1987)).

mentation; and (3) whether the PLRB had jurisdiction to hear an unfair labor practice charge involving Act 111 employees. We will address the jurisdictional issue first.

*I. PLRB Jurisdiction.*

In *City of Coatesville v. Pennsylvania Labor Relations Board,* 77 Pa.Commonwealth Ct. 265, 465 A.2d 1073 (1983), this court held that the PLRB had jurisdiction to decide unfair labor practice charges involving Act 111 employees. The holding in *Coatesville* was consistent with this court's prior decisions [5] and followed logically from our Supreme Court's decision in *Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board,* 470 Pa. 550, 369 A.2d 259 (1977), which held that the PLRA and Act 111 should, when not in conflict, be read *in pari materia.* While conceding that *Coatesville* controls, the City invites us to reconsider our reasoning and overturn *Coatesville's* holding.

After reviewing *Philadelphia Fire Officers* and *Geriot v. Council of Borough of Darby,* 491 Pa. 63, 417 A.2d 1144 (1980), we are satisfied that our decision in *Coatesville* correctly interprets the former and distinguishes the latter. Moreover, the City presents no new arguments which would lead us to believe that *Coatesville* was incorrectly decided. Accordingly, we decline the City's invitation to overturn *Coatesville* and affirm our holding that the PLRB has jurisdiction to decide charges of unfair labor practices brought under the PLRA, notwithstanding the involvement of Act 111 employees.

*II. Obligation to Bargain.*

In its petition for review, the City cites as error the PLRB's conclusion that the change in the desk sergeant's duties was a mandatory subject of bargaining under Act 111. Whether an issue is a mandatory subject of bargaining is an important threshold determination because, as the PLRB stated, "[o]nce it is established that a matter is a mandatory subject of

5. *See Coatesville* at 267, 465 A.2d at 1075 (citing *Local 302, International Association of Fire Fighters et al. v. City of Allentown,* 55 Pa. Commonwealth Ct. 599, 423 A.2d 1119 (1980)).

bargaining the employer is barred from acting unilaterally, without satisfaction of the statutory impasse resolution procedure." (PLRB Final Order at 3.) Although not argued extensively before this court, for purposes of clarity we will discuss briefly the principles applicable to this determination.

Under Act 111, a matter is deemed a mandatory subject of bargaining if it bears a rational relationship to employees' duties. *City of Clairton v. Pennsylvania Labor Relations Board,* 107 Pa.Commonwealth Ct. 561, 528 A.2d 1048 (1987). Even if our prior decisions had not recognized that the removal of work from a bargaining unit is a matter of mandatory bargaining under Act 111, *see, e.g., County of Bucks v. Pennsylvania Labor Relations Board,* 77 Pa.Commonwealth Ct. 259, 465 A.2d 731 (1983), we would have no difficulty now in concluding here that the removal of work bears a rational relationship to employees' duties. *City of Harrisburg v. Pennsylvania Labor Relations Board,* 146 Pa.Commonwealth Ct. 242, 605 A.2d 440 (1992). In that case, we cited *City of Clairton* for its holding that *any* management action concerning police and fire personnel is bargainable when that action has a rational relationship to their duties.

The obligation to bargain, however, is not wholly contingent on the mandatory nature of the subject at issue. The parties may, through the terms of their collective bargaining agreement, define and expand the employer's right to act unilaterally or waive the right to bargain. As the PLRB found in this case, however, the management rights clause of the collective bargaining agreement between the City and the FOP is neither broad enough to permit a unilateral change in bargaining unit work, nor explicit enough to operate as a waiver of the right to bargain.[6] Because we find no error in the PLRB's

6. The collective bargaining agreement states, in pertinent part, that "*Subject only to any limitations set forth in this Agreement, it is understood and agreed that the City retains the right to* manage its business including, but not limited to, the right to *direct the work force, the right to hire, promote, retain, transfer and assign employees in positions;* the right to suspend, discharge, demote or take other disciplinary action. The City shall retain the right to maintain efficiency in the Police Department by determining the methods, the means and

conclusion that the change in the desk sergeant's duties, involving as it did the removal of work from the bargaining unit, was subject to mandatory bargaining under Act 111, we will affirm the PLRB on this issue.

### III. Fulfillment of the Bargaining Obligation.

The main thrust of the City's arguments is that it fulfilled its obligations under Act 111 by bargaining in good faith to impasse, prior to unilateral implementation of General Order 16. The PLRB found otherwise. According to the PLRB,

> [t]he question . . . [is] what is the City's obligation to bargain before it can implement a mandatory subject of bargaining under Act 111 and the PLRA. Act 111 in Section 4 statutorily mandates the collective bargaining procedure to be followed by a public employer. There are only two ways an employer under Act 111 and the PLRA can implement a change in a mandatory subject of bargaining; by agreement with the bargaining representative or pursuant to the provisions of an interest arbitration award. Therefore, *absent an agreement with the bargaining representative of the employes, the employer's bargaining obligation is not satisfied unless the issue under consideration is submitted to arbitration.* Here, the Union and the employer did not reach agreement on the issue of removing work from the bargaining unit, nor was the issue submitted to arbitration before the City implemented the removal.

(PLRB Final Order at 4–5.)

As interpreted by the City, the PLRB's conclusion is tantamount to forced arbitration because arbitration is made a necessary step in the employer's bargaining obligation. However, we need not consider this aspect of the City's argument in depth because, as the PLRB recognized when it made the PDO final and absolute, "the parties never engaged in bar-

personnel by which such operations are conducted . . ." and that "[m]atters of inherent managerial policy, such as . . . [the] determination of methods and means by which to operate the Police Department, are reserved exclusively to the City. . . ." (Collective Bargaining Agreement at 7.)

gaining as it is generally understood." [7] (PDO at 6.) For this same reason, we do not reach the question of whether the City's interpretation of "impasse" is consistent with Act 111 case law.

As stated in the PDO:

The facts of the case show that the City engaged in discussions with the Union over the reorganization of the ... communications center, but that when the matter was taken back to the general membership of the FOP, the membership rejected the new arrangement. Despite these discussions, *the parties never engaged in bargaining as it is generally understood. For the employer to raise the issue of subcontracting in the context of an informal labor-management committee is insufficient in meeting its responsibility to bargain the issue.*

(PDO at 6.) We agree. There is no provision in Act 111 or the PLRA which sets forth minimum criteria for what constitutes bargaining. However, at a minimum, bargaining involves a level of formality in the meeting and discussion process which was absent here.

We find no reversible error in the PLRB's conclusion and, accordingly, affirm.

## ORDER

AND NOW, this 19th day of February, 1993, the order of the Pennsylvania Labor Relations Board in the above-captioned matter is affirmed.

COLINS, J., dissents.

7. As a practical matter, the only substantive change the city made was, in essence, that the desk sergeants no longer supervise the civilian employees. It would seem that perhaps such a narrow issue would be more efficiently handled by a grievance procedure. As noted, section 6(1)(e) of the PLRA declares that it is an unfair labor practice for an employer to refuse to bargain collectively with employee representatives, subject to the provisions of section 7(a) of the act. Section 7(a), 43 P.S. § 211.7(a), in turn, provides that an employee or a group of employees may at any time present a grievance to their employer. However, we are compelled by the cases cited to uphold the Board's conclusion and cannot compel the parties to use the grievance procedure.