PENNSYLVANIA STATE TROOPERS' ASSOCIATION, Petitioner,

v.

PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 1995.
Decided Feb. 20, 1996.

---

Gary M. Lightman, for Petitioner.

Peter Lassi, for Respondent.

Harold I. Goodman, for Intervenors, William H. Bolden, III, et al.

Before FRIEDMAN and KELLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

The Pennsylvania State Troopers' Association (PSTA) appeals a final order of the Pennsylvania Labor Relations Board (PLRB)

dismissing its claim that the Pennsylvania State Police (PSP) committed an unfair labor practice pertaining to promotional examinations.

The PLRB found the following facts. A 1974 consent decree resolved a federal class action lawsuit brought by William H. Bolden and other police officers (*Bolden* plaintiffs) against the PSP alleging discrimination in the hiring and promotion of minorities.[1] The decree addresses interim procedures and standards to be followed in hiring and promotion. The federal court has retained jurisdiction of the decree, which provides that the parties may apply to the court for modification of its terms. Such modifications were entered into in December 1992 and April 1993 with the *Bolden* plaintiffs, the PSP and the PSTA as signatories.

Subsequently, the *Bolden* plaintiffs sought to lower the cutoff score in promotional examinations in order to attain more minority candidates for promotion. In the fall of 1993, the PSP and the *Bolden* plaintiffs negotiated an agreement whereby the plaintiffs would not pursue additional litigation in exchange for the administration of an interim promotional examination in April 1994. The last exam was in April 1992 and the past practice had been to hold exams every two years.

■ The collective bargaining agreement into which the PSP and the PSTA entered in July 1992 provides for a committee to meet and discuss all issues related to the current promotion system. The PSTA alleged before the PLRB that the PSP committed an unfair labor practice by unilaterally changing promotional procedures and by bargaining over employment conditions with an entity other than the PSTA. The PLRB held that it had

no jurisdiction over the claim because of the federal court consent decree and that, even if it had jurisdiction, no unfair labor practice was committed. The PLRB also held untimely a claim by the PSTA that the PSP unilaterally changed the definition of "restricted duty." The PSTA now appeals to this Court.[2]

## INTRODUCTION

This case involves two unique questions. One, does the PLRB have jurisdiction to decide if the PSP committed an unfair labor practice when the activities the PSP engaged in concerned minority promotions, the subject of an extensively considered and long-standing federal court consent decree and its amendments? Two, if the PLRB does have jurisdiction, was there an unfair labor practice where the PSP did not bargain with the PSTA over the subject matter involved?[3]

## JURISDICTION

■ Both the hearing officer and the PLRB held that, because the federal consent decree addressed promotional procedures, the PSTA's unfair labor practice charge should have been made to the federal court, the PLRB having no jurisdiction. We do not agree that the consent decree deprives the PLRB of jurisdiction. As we shall point out in this opinion, the fact that there is such a consent decree is certainly relevant, but it is not sufficient *ipso facto* to oust the PLRB's jurisdiction to decide whether the PSP's actions constituted an unfair labor practice. We thus reject the argument at the outset that the consent decree preempted the jurisdiction of the PLRB and precluded any deci-

---

1. The *Bolden* plaintiffs and the PSP have each filed a brief as intervenors in support of the PLRB's decision.

2. Our scope of review is limited to determining whether there has been a constitutional violation or an error of law and whether the necessary findings of fact are supported by substantial evidence. *Harrisburg v. Pennsylvania Labor Relations Board*, 146 Pa.Cmwlth. 242, 605 A.2d 440 (1992).

3. The PSTA also argues that the PLRB erred in concluding that its unfair labor practice charge

pertaining to the PSP's unilateral alteration of the definition of restricted duty was untimely made. The PSTA contends that there was no need to amend its complaint or plead this charge separately within six weeks of the alleged conduct because this charge is subsumed in the charge as originally filed. "It [the charge] relates to the very same subject matter, being promotion examinations." (Petitioner's brief, p. 34). Due to our disposition of the question of whether an unfair labor practice was committed, it thus becomes unnecessary to address this challenge.

sion on the question of whether the PSP engaged in an unfair labor practice.

The parties on both sides of the dispute cite authority for their respective positions that, unfortunately, is not entirely dispositive of the jurisdictional question. The petitioner PSTA commends to us those cases in Pennsylvania which have long and firmly stood for the proposition that jurisdiction to determine whether an unfair labor practice has occurred lies in the PLRB "and nowhere else." *Hollinger v. Department of Public Welfare,* 469 Pa. 358, 366, 365 A.2d 1245, 1249 (1976). The PSTA cites federal court cases holding analogously that jurisdiction over the questions of federal unfair labor practice claims belongs in the National Labor Relations Board, *Hobbs v. Hawkins,* 968 F.2d 471 (5th Cir.1992), even when a claim could have been made under federal statutes other than the National Labor Relations Act. *Frank Briscoe, Inc. v. National Labor Relations Board,* 637 F.2d 946 (3rd Cir.1981). It also cites those cases where the federal courts have applied Pennsylvania law and dismissed complaints because exclusive jurisdiction over them lay within the PLRB. *Lindenbaum v. Philadelphia,* 584 F.Supp. 1190 (E.D.Pa. 1984); *Sellers v. Local 1598,* 600 F.Supp. 1205 (E.D.Pa.1984). In none of these cases did the federal court retain jurisdiction over a consent decree to which the unfair labor practice complainant was a party, and the terms of which governed conduct normally the subject of unfair labor practice disputes.

On the other hand, the respondent PLRB relied on *Karan v. Nabisco,* 78 F.R.D. 388, 400 (W.D.Pa.1978) in its decision. It and the intervenor appellees now advance that case on appeal for the proposition that, when a federal district court has jurisdiction in an employment discrimination case, it retains jurisdiction over "all matters reasonably expected to grow out of the allegations contained in the charge." However, in that case, the defendants in a federal class action suit challenged the court's jurisdiction to entertain charges brought on behalf of class members where alleged violations against those plaintiffs were not contained in the underlying federal agency complaint. The

jurisdictional question the court considered there was entirely different. It in no way involved the interplay between a federal consent decree resolving a dispute over federal law and a state law claim brought in another forum. In fact, the question of jurisdiction in *Karan* was two-fold but very limited, concerned first with the jurisdictional limitations of filing a complaint with a federal agency before bringing a federal class action claim, and next with the contention that the court's jurisdiction was limited to those specific issues contained in the charge brought before the federal agency. As we read it, *Karan* is certainly not authority for the proposition that a federal court hearing an employment discrimination complaint enjoys exclusive, omnibus jurisdiction over all state claims which are based on conduct that is also the subject of federal litigation.

The PLRB, intervenors PSP and the *Bolden* plaintiffs invoke another case, one which arises out of the *Bolden* consent decree itself, *O'Burn v. Shapp,* 70 F.R.D. 549 (E.D.Pa. 1976), aff'd 546 F.2d 417 (3rd Cir.1976), *cert. denied,* 430 U.S. 968, 97 S.Ct. 1650, 52 L.Ed.2d 359 (1977), for the principle that the federal court has exclusive jurisdiction over this state unfair labor practice complaint. In that 1976 case, the district court granted a motion to dismiss for lack of jurisdiction a complaint asserting state claims. The court noted specifically that the relief sought in that complaint was the setting aside of the *Bolden* consent decree for fraud upon the court. The court found that the claim of state statute violations was actually an unallowable collateral attack on the consent decree as a final judgment. *Id.* at 552. Hence, the *O'Burn* plaintiffs' claims were based on the very consent decree over which the court maintained continuing jurisdiction. "This factor of continuing jurisdiction is quite significant in view of plaintiffs' allegation that the *Bolden* consent decree was procured by a fraud on the court." *Id.* In the case dismissed by the *O'Burn* court, the relief sought was the overturning of the final judgment (i.e., the consent decree) entered by that court. In the case before us, the relief sought is a declaration that, under state law, unfair labor practices had been committed, and an injunction against their continued

practice. While the PSTA's charges contain an allegation that the *Bolden* consent decree has been breached, the PSTA does not ask the PLRB to compel compliance with the decree or, for that matter, to grant relief from it.

Nor is *Jackson v. Alabama Department of Public Safety,* 657 F.2d 689 (5th Cir.1981), *cert. denied,* 455 U.S. 956, 102 S.Ct. 1465, 71 L.Ed.2d 673 (1982), of much avail to the PSP or intervenors. There, the Court of Appeals for the Fifth Circuit found that "[p]laintiff's essential claim [was] that the defendants did not comply with the consent decree." *Id.* at 690. It held that summary judgment was properly granted based on the effect of prior class litigation, in which the plaintiff was a member. The court found it "quite apparent that this claim should be litigated in the [prior] class action" because "[t]he right asserted ... was 'created' ... by the consent decree. This is not the kind of case where the right would exist absent the decree...." *Id.* Here, by clear contrast, the statutory right to file an unfair labor practice charge exists notwithstanding a consent decree into which the PSTA entered.

Instead, we believe that the intervening *Bolden* plaintiffs have come nearest the mark in their characterization of this question as one of comity, or, "the tension ... between courts and/or agencies having concurrent jurisdiction over the same matter." (Intervenors' brief, p. 12, n. 17). On this point, we find guidance in *Donovan v. Dallas,* 377 U.S. 408, 413, 84 S.Ct. 1579, 1582, 12 L.Ed.2d 409 (1964) (citation omitted), in which it was recognized that

> "[e]arly in the history of our country a general rule was established that the state and federal courts would not interfere with or try to restrain each other's proceedings. That rule has continued substantially unchanged to this time.... [w]here the judgment sought is strictly in personam, both the state court and the federal court, having concurrent jurisdiction, may proceed

with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other."

■ We are also mindful of the blackletter principle that subject matter jurisdiction is determined not by whether the forum is able to grant the particular relief sought on the cause of action pleaded, but by whether it is competent to decide controversies of the general class to which the case presented belongs. *Kaelin v. University of Pittsburgh,* 421 Pa. 220, 218 A.2d 798 (1966), *cert. denied* 385 U.S. 837, 87 S.Ct. 84, 17 L.Ed.2d 71 (1966).[4] Clearly, the PLRB is competent to decide whether an unfair labor practice has been committed, *Hollinger,* and the federal district court has never decided the unfair labor practice question in the *Bolden* litigation. Moreover, a PLRB unfair labor practice hearing is not *per se* "the inconsistent or contradictory proceeding" the *O'Burn* court sought to avoid. Nor does the PSTA ask us to enjoin the parties from effectuating the *Bolden* consent decree. We hold therefore that continuing federal court jurisdiction over the *Bolden* consent decree does not divest the PLRB of jurisdiction to decide the question of whether an unfair labor practice has occurred. Whether it is able to say that such a practice in fact occurred is another matter.

## UNFAIR LABOR PRACTICE

We proceed to the facts admitted in this case to determine whether the PLRB erred in finding that no unfair labor practice had occurred. The following findings by the PLRB's hearing examiner set the stage for this dispute.

10. That in 1993 following the two modifications to the consent decree, the *Bolden* plaintiffs sought to lower the cutoff score in order to pick up additional minority candidates for promotion. Part of the motivation was the fact that there was [sic] no longer any eligible minorities in the ranks

---

**4.** Compare *Wolgin v. State Mutual Investors,* 265 Pa.Superior Ct. 525, 402 A.2d 669 (1979), in which the Superior Court concluded that principles of comity (as opposed to the law of subject matter jurisdiction) compelled the state court to dismiss a complaint seeking an injunction against the performance of a settlement agreement approved by the federal district court, "where no independent right protected by Pennsylvania statute or caselaw merits [the state court's] interference in this matter." *Id.* at 527, 402 A.2d at 673.

competing for lieutenant and sergeant. (N.T. 106, 109)

11. That in September 1993 the PSP held a meeting with Bolden plaintiffs and the Association representatives to discuss the need for another interim examination sometime in the spring of 1994. The reasons stated by PSP for wanting to give the examination are as follows: The last examination was given in April 1992 and past practice has been to give the examination in a two-year cycle; the current promotion list did not contain any eligible minorities in the ranks of lieutenant and sergeant; there is a large number of members considering retirement and this would be the last opportunity for a chance at a promotion. (N.T. 68, 107, 109)

12. That during the September 14, 1993 meeting, the Bolden plaintiffs expressed their opposition to the administration over an interim promotional examination and the Association was not prepared to offer any proposal regarding an interim examination. (N.T. 106–107)

13. That following the September 14, 1993 meeting, the PSP counsel communicated with counsel for the Association and the Bolden plaintiffs advising them that the commissioner had proposed the administration of an interim test as an alternative solution to the proposal offered by the Bolden plaintiffs to lower the cutoff score and "that any solutions, which impact upon the terms of the consent decree or the agreement between the parties should be reached by consensus among the parties." (Complainant Exhibit 7)

14. That on October 5, 1993, PSP counsel wrote to Diane Wetrogan PhD. coordinator for the panel of experts which was assigned to develop a valid promotion test pursuant to the agreement of the parties. In that letter PSP inquired regarding the timetable for the development of the valid test and also inquired whether the administration of an interim test by the PSP would impact on or cause delays in the validation project being undertaken by the expert panel. The letter went on to state: "the expert panel will not play any role on [sic] developing or administering the inter-

im tests but rather said functions would be performed by an outside consultant as has been done in the past." Copies of this letter were transmitted to counsel for the Bolden plaintiffs and counsel for the Association. (Complainant Exhibit 7)

15. That also on October 5, 1993, PSP counsel wrote to the counsels for the Bolden plaintiffs and the Association requesting a statement of the respective clients position regarding the Bolden plaintiffs proposal of lowering the cut scores, the respondents proposal of using an interim examination, and "any other proposals or suggestions either may have to resolve the issue." The letter also stated "in the event that one or more parties are entrenched in a position of opposition to all current proposals and assuming no other suggestions are forthcoming it may not be productive to go forward with the meeting as scheduled." Further, the letter noted that the PSP's proposal for resolution continues to be the administration of an interim examination the spring of 1994 and that it would not agree to lowering the cut scores as proposed by the Bolden plaintiffs unless all parties were in agreement. (Complainant Exhibit 7)

16. That at the second meeting held in October the Association representatives refused to participate because the specifics of interim examination were being discussed. (N.T. 68, 93)

17. That between the October meeting and November 9, 1993, the PSP and the Bolden plaintiffs negotiated an agreement whereby the Bolden plaintiff class would not file suit to increase the number of qualified minorities and would not challenge the promotional test in exchange for the administration for an interim examination. (N.T. 56)

18. That on or about November 9, 1993, the PSP commissioner informed the Association and the Bolden plaintiffs that he had decided to administer interim promotional examination in the spring of 1994. (Complainant Exhibit 3)

19. That the PSP has stopped promoting from the current promotion list as of the date of the hearing. (N.T. 84–85)

(Proposed decision and order, July 25, 1995, pp. 3–4).

■ Under ordinary circumstances, an employer must bargain collectively over questions regarding promotions and promotional examinations. Indeed, this bargaining requirement would cover the setting of dates for promotional examinations, since such dates represent not merely an examination schedule but also implicate a new promotional eligibility list to the prejudice of those remaining on the old list. *See City of Bethlehem v. Pennsylvania Labor Relations Board,* 153 Pa.Cmwlth. 544, 621 A.2d 1184 (1993).

■ Despite the fact that in the usual case it would be an unfair labor practice to refuse to bargain with a union over promotional matters, we cannot conclude that in this case there was an unfair labor practice.[5] The PSP was obligated by the consent decree and its amendments to provide a certain percentage of minority promotions. The hearing examiner stated, based on the evidence adduced, that

> [t]he record is replete with testimony and documents which convincingly establish that the reason PSP decided to administer an interim examination is to increase the number of minorities on the promotional lists. It is uncontested that the current promotional list did not have a sufficient pool of minority candidates. Since the very core of the consent decree involves that exact issue, it necessarily follows that the interim examination is one such topic that the federal court has retained jurisdiction over.

(Proposed decision and order, July 25, 1994, pp. 5–6).

As the hearing examiner found in findings numbers sixteen and seventeen, which findings are supported by the record evidence, the PSP agreed to an interim examination with the *Bolden* plaintiffs only when the PSTA refused at the October 1993 meeting of the parties to make a suggestion concerning another method of solving the problem.

It could be said that the compulsion of the consent decree excused the PSP from any further bargaining after that October meeting.

■ Since the consent decree concerned itself with many aspects of promotion and, specifically, with the insufficiency of minority state police members, and, since the charges the *Bolden* plaintiffs brought in their complaint raised this issue, the PSP was obliged under the consent decree to talk to the *Bolden* plaintiffs in order to effectuate compliance with it. Thus, there cannot be any unfair labor practice merely because the PSP engaged in a discussion with the *Bolden* plaintiffs and not with the PSTA. This discussion, indeed, the ultimate agreement between the *Bolden* plaintiffs and the PSP, may be in conflict with the spirit of the consent decree and its amendments in that it constitutes a two-party rather than a three-party agreement, but that is a matter for decision by the federal court.

■ We also conclude that the combination of the consent decree and the collective bargaining agreement indicates a clear intention on the part of the PSTA to waive the right to collective bargaining on the subject of minority promotions generally. The consent decree and its amendments from 1974 through 1993 are an all-encompassing agreement governing the subject of promotions, including tests. The July 1992 collective bargaining agreement contains nothing specific about promotions (perhaps because of the existing consent decree) except the following provision.

ARTICLE 42

SPECIAL COMMITTEE—
PROMOTION SYSTEM

The committee comprised of five persons to be selected by the PSTA and five persons to be selected by the Commissioner shall *meet and discuss on all issues related to the current promotion system.* The committee shall make written recommen-

---

5. The PLRB held that past practice was to give the promotional examinations every two years and it was not an unfair labor practice to follow that two-year cycle. We prefer, however, to de-

cide this case on the grounds that the PSTA has waived its right to bargain on the specific issue involved.

dations to the Commissioner. [Emphasis added].

First, it is important to note that this provision requires the PSP Commissioner and PSTA representatives to "meet and discuss." *See Pennsylvania Labor Relations Board v. Association of Pennsylvania State College and University Faculties/Pennsylvania Association of Higher Education (APSCUF/PAHE),* 24 Pa.Cmwlth. 337, 355 A.2d 853 (1976). Second, it cannot be gainsaid that the PSTA entered into this July 1992 agreement unaware of the consent decree or that the "current promotion system" in Article 42 refers to anything other than that established under the consent decree. Indeed, the PSTA stated in its unfair labor practice complaint that the PSP effected a "unilateral change in the terms and conditions of State Police Officers' employment, specifically by changing existing promotional procedures as agreed to in the contract of December 18, 1992." That December 18, 1992 contract is an agreement to modify the terms of the consent decree.

We thus conclude that the PSTA "bargained away" any right it may have had to bargain to impasse on the subject of promotions. Given the absence of any provision for promotion procedures in the collective bargaining agreement other than Article 42, which requires nothing other than a meet-and-discuss process, and given the consent decree covering the topic, it would be difficult to conclude otherwise. These two documents, then, evidence the required "clear and unmistakable waiver," [6] of the right to bargain to impasse over promotion procedures.

The PSP did meet and discuss with the PSTA on the subject, thereby complying with the collective bargaining agreement. It requested the PSTA's input into solving the problem of the interim examination. The PSTA did not propose any alternatives and so the PSP acted in order to avoid further litigation in federal court. Under these cir-

cumstances, we hold that the PSP did not commit an unfair labor practice when it (1) discussed an interim promotional examination with the *Bolden* plaintiffs, or (2) did not bargain further with the PSTA and, failing agreement, submit the matter to arbitration. The PSP had, by virtue of its previous actions in the federal court and by virtue of Article 42 of the collective bargaining agreement, waived its right to bargain collectively on the issue of the promotions involved.

Accordingly, having found that the PLRB is not without jurisdiction to entertain the unfair labor practices charges in question, we reverse the PLRB's decision insofar as it ruled it was without jurisdiction.[7] Having agreed that no unfair labor practice has occurred, we affirm that portion of the PLRB's decision so finding.

### ORDER

AND NOW, this 20th day of February, 1996, the order of the Pennsylvania Labor Relations board, Case No. PF–C–93–166–E, dated January 24, 1995, is hereby reversed in part and affirmed in part as set forth in the foregoing opinion.

---

6. *Township of Upper Saucon v. Pennsylvania Labor Relations Board,* 152 Pa.Cmwlth. 530, 620 A.2d 71 (1993).

7. Our disposition of this case makes it unnecessary to decide whether the labor board should have applied the principles of comity and de-

ferred to the federal court because of the possibility that an ultimate decision by an arbitrator could have placed the PSP in a position where it would have been in violation of the federal consent decree.