**CITY OF PHILADELPHIA, Appellant,**

**v.**

**FRATERNAL ORDER OF POLICE LODGE NO. 5.**

Commonwealth Court of Pennsylvania.

Argued March 12, 1999.
Decided April 29, 1999.

Mark J. Foley, Philadelphia, for appellant.

Thomas H. Kohn, Philadelphia, for appellee.

Before DOYLE, J., SMITH, J., and MIRARCHI, Jr., Senior Judge.

SMITH, Judge.

The City of Philadelphia (City) appeals from an order of the Court of Common Pleas of Philadelphia County that confirmed a grievance arbitration award of June 9, 1998 concerning the position of Staff Inspector in favor of the Fraternal Order of Police Lodge No. 5 (FOP) and dismissed the City's petition to vacate the award. The City questions whether the Court of Common Pleas erred in applying "essence test" review rather than "narrow certiorari" review; whether the arbitrator's decision to allow the FOP, over objection, to change the nature of the dispute exceeded her jurisdiction, violated the American Arbitration Association Labor Arbitration Rules (AAA Rules), constituted an irregularity in the proceeding or effectively deprived the City of a meaningful opportunity to participate in the selection of the arbitrator; and whether the arbitrator exceeded her authority by ordering the City to assign work to Staff Inspectors or to pay other officers their rate and to bargain with the FOP over the decision to eliminate that rank.

I

The City created the position of Staff Inspector in 1953. As last revised in 1968, the class specification for this contractually specified rank stated that such employees were assigned to special and confidential investigations for the Police Commissioner into complaints against police officers. Under the collective bargaining agreement (Agreement) between the City and the police officers pursuant to the Act commonly known as Act 111, Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1 – 217.10, the pay for the position is more than that for Captain but less than that for Inspector. By 1980 Staff Inspectors had stopped reporting directly to the Commissioner; rather, they reported through the Internal Affairs Bureau hierarchy. A mayoral directive in 1980 provided that the Internal Affairs Bureau should appoint a Staff Inspector to investigate promptly any citizen complaints of alleged police misconduct. In the 1980s the Internal Affairs Bureau was replaced with the Internal Investigations Bureau, of which the Internal Affairs Division was a part.

The Police Department decided in the early 1980s not to schedule any more examinations for the Staff Inspector position; the last examination was conducted in 1982. The number of Staff Inspectors dwindled: in 1980 there were 21; by 1987 there were 5 assigned to the Internal Affairs Division. In 1987 the Police Department's reorganization moved 13 Captains to the Division to perform certain tasks previously performed by Staff Inspectors. In June 1991 the only remaining Staff Inspectors in the Division were promoted or reassigned. On June 29, 1992, the FOP filed the demand for arbitration involved here, stating as the nature of the dispute that the bargaining unit contained only two Staff Inspectors and that "[t]his number represents a significant reduction in the number of Staff Inspectors over the past ten years without the scheduling of the appropriate promotional examination." Joint Ex. 2 in the arbitration proceeding. The claim for relief sought stated: "That a promotional examination be scheduled immediately for Staff Inspectors. Make whole." *Id.* In June 1993 the Mayor issued Executive Order 9–93, which revised the 1980 directive and, among other changes, eliminated any reference to Staff Inspectors in the Division.

Hearings commenced before the third appointed arbitrator in October 1997.[1] At the outset the arbitrator stated that the parties could not agree on the issue before her, granting her the authority to frame the issue. The FOP proposed that the issue was whether the City improperly (a) failed to fill the position of Staff Inspector and (b) utilized lower levels of officers to perform Staff Inspector duties and, if so, what the remedy should be. The City proposed issues of, first, whether the arbitrator had authority to hear the case because the City believed that a grievance was never filed; second, if no grievance was necessary, whether the matter was untimely and therefore not arbitrable; and third, if the case was properly before the arbitrator, whether the City violated the contract by failing to schedule promotional examinations for the position of Staff Inspector and, if so, what the remedy should be. The City also asserted that the FOP had waived the complaint by submitting it to intervening interest arbitration panels.

In her opinion and award the arbitrator framed the issues as (1) whether the grievance was arbitrable and (2) "[a]ssuming the matter is procedurally and substantively arbitrable, did the City violate the contract by depleting the rank of Staff Inspector, and/or by assigning the work of Staff Inspectors to other bargaining unit members? If so, what shall be the remedy?" Arbitrator's opinion and award at p. 1.[2] She initially determined that procedural objections regarding the filing of a grievance and timeliness had been waived, and she declined to consider them. The arbitrator concluded that the substantive arbitrability question of whether the out-of-class pay claims were properly before her was akin to the issue of jurisdiction in court, and therefore it could be raised on the first day of the hearings. She concluded that the out-of-class claims might reasonably be raised in the context of a potential remedy or

an area of proof. Further, the arbitrator rejected the contention that the claim violated AAA Rules, stating that the demand for arbitration could not be viewed as a court pleading. On the merits of the out-of-class pay issue, the arbitrator noted that the rank of Staff Inspector had become a shell, with only one such officer assigned to the Internal Investigations Bureau, and that the City revealed at arbitration its intention to abolish the rank upon the departure of the final incumbent. She found that the City had assigned duties previously performed by Staff Inspectors to Captains. An example of work typically provided in the Staff Inspector job description matched the duties performed by Captains in the Internal Affairs Division.

The arbitrator concluded, however, that remedies should be limited by equitable considerations. Although the City began assigning Staff Inspector duties to Captains in 1987, and Article XVI of the Agreement provided a clear remedy for out-of-class work, the FOP did not file its demand for arbitration until 1992. When the FOP did file the demand, it failed to specifically state that it was seeking out-of-class compensation. Also, the FOP did not place the City on notice that out-of-class pay liability was mounting in a series of Act 111 awards after the demand was filed. However, despite acquiescence in violations, a party may insist on compliance in the future after notice to the violator. The arbitrator concluded that the FOP provided adequate notice as of the first day of hearings, October 8, 1997; she directed that the City make appropriate out-of-class payments to Captains in the Internal Affairs Division performing Staff Inspector duties from October 8, 1997 to the date of the award.

On the question of the propriety of the City's virtual elimination of the rank of Staff Inspector, the arbitrator concluded that the existence of a job classification set out in the

---

**1.** The first arbitrator appointed to hear this matter withdrew due to illness; the second arbitrator resigned after the FOP moved for him to recuse.

**2.** *Compare Arbitration Between Yoder Police and Township,* 654 A.2d 651 (Pa.Cmwlth.1995), which held that where a notice for binding interest arbitration pursuant to Section 4(a) of Act

111, 43 P.S. § 217.4(a), referred to "length of contract" and "compensation and wages," the arbitrators correctly determined that they had jurisdiction to consider, and authority to award, a three-year contract and a guarantee of full-time employment because these matters had been placed in issue.

Agreement is a mandatory subject of bargaining as it bears a rational relationship to police duties. The general management rights clause of this Agreement did not constitute a clear and unmistakable waiver of the right to bargain over the elimination of a rank. The City, therefore, had the obligation to bargain over this issue. The arbitrator declined to grant the requested relief of ordering the City to promote individuals to the rank of Staff Inspector as being outside her authority. She therefore ordered salary payments as limited; ordered the City to assign Staff Inspector functions to Staff Inspectors or to pay the applicable rate to lower-ranked individuals performing Internal Affairs Division Staff Inspector functions; and ordered the City to bargain, upon request from the FOP, over the decision to eliminate the rank of Staff Inspector.

The City petitioned the Court of Common Pleas to vacate the award. The court stated that an arbitration award will not be disturbed so long as it draws its essence from the collective bargaining agreement. It concluded that the arbitrator's decisions as to arbitrability and as to the merits met the "essence test," that is, that they could in a rational way be derived from the Agreement in view of its language, its context and other indicia of the parties' intent. The court entered judgment in favor of the FOP and against the City; it confirmed the arbitration award and dismissed the City's petition to vacate.

## II

■ On appeal to this Court, the City first emphasizes that the Court of Common Pleas incorrectly applied "essence test" review. In *Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n (Betancourt)*, 540 Pa. 66, 656 A.2d 83 (1995), the Supreme Court affirmed this Court's holding that judicial review of Act 111 grievance arbitration awards is in the nature of narrow certiorari.

This review "limits a reviewing court to questions regarding: (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights." *Id.* at 71, 656 A.2d at 85. This Court agrees that the trial court erred in reviewing under the essence test.[3]

■ The City argues that the trial court's error precluded it from considering dispositive issues of the arbitrator's jurisdiction, authority and procedural irregularities. The City notes that this Court has held that arbitrators exceed their jurisdiction under the first point of the narrow certiorari review when they address questions that were not submitted to them by the parties. *City of Philadelphia v. City of Philadelphia, Fraternal Order of Police, Lodge No. 5*, 717 A.2d 609 (Pa.Cmwlth.1998); *Marple Township v. Delaware County F.O.P. Lodge 27*, 660 A.2d 211 (Pa.Cmwlth.1995). In the present case the parties have expressly adopted the AAA Rules, including Rule 7(b), which provides in pertinent part: "After the arbitrator is appointed, no new or different claim may be submitted except with the consent of the arbitrator and all other parties."

The Court has held also that an arbitrator acts in an excess of his or her authority under the third point of narrow certiorari review if in fashioning a remedy the arbitrator mandates that an illegal act be carried out or grants an award that addresses issues beyond the scope of the collective bargaining agreement or that extends beyond the terms and conditions of the employment. *Township of Ridley v. Fraternal Order of Police Lodge No. 27*, 718 A.2d 872 (Pa.Cmwlth. 1998); *Town of McCandless v. McCandless Police Officers Ass'n*, 677 A.2d 879 (Pa. Cmwlth.1996). *See also Appeal of Upper Providence Police Delaware County*, 514 Pa. 501, 526 A.2d 315 (1987) (holding that an award may be in excess of the arbitrators'

---

**3.** This Court generally has not remanded to trial courts for consideration under the correct scope of review in this recurring circumstance. *See, e.g., City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 711 A.2d 1060 (Pa.Cmwlth. 1998). In general, the Court has regarded essence test review as being broader than the narrow certiorari scope of review and has held that if a party failed to prevail under an erroneous application of the essence test then that error was harmless. *Id.* In the present case, however, the City specifically argues that the error was not harmless.

powers if it requires the public employer to perform an act that is prohibited by law or if it does not involve legitimate terms and conditions of employment); *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969) (same).

The FOP notes that this Court has stated that broad judicial deference is given to arbitrators' decisions regarding the arbitrability of subject matter, citing *Mifflinburg Area Education Association v. Mifflinburg Area School Dist.,* 118 Pa.Cmwlth. 328, 545 A.2d 419 (1988), and it contends that the arbitrator's rejection of the City's assertion that out-of-class pay claims could not be considered should settle the matter. The Court observes, however, that *Mifflinburg* was decided under essence test review, and it therefore is not applicable. In the present case, all agree that the arbitrator was bound by the Agreement and by applicable case law to consider only the questions properly presented to her. The dispute over jurisdiction turns on whether the arbitrator correctly interpreted the questions that were presented as including claims for out-of-class pay. The Court has also held, however, that written arbitral submissions, which usually are drafted by unrepresented lay persons, are not to be scrutinized with the particularity appropriate to judicial pleadings; so long as the issue is ultimately presented to the arbitrator in some proper manner, as by an oral demand at the hearing, and is one within the arbitrator's competence, relief may be granted. *Perkiomen Valley Education Association v. Perkiomen Valley School Dist.,* 74 Pa.Cmwlth. 582, 460 A.2d 896 (1983).

The Court agrees with the FOP that the arbitrator acted within her jurisdiction. The Court notes that the nature of the dispute in the FOP's 1992 demand, stating that Staff Inspector positions had been permitted to dwindle, necessarily implied that some officers were performing Staff Inspector duties

but not receiving Staff Inspector pay. The demand to "Make whole" in the claim for relief sought encompasses a request for compensation for such individuals. Evidence as to the extent to which others had performed and were performing the work of Staff Inspectors rationally and logically related to the arbitrator's consideration of whether the Staff Inspector position had been permitted to dwindle in violation of the Agreement and to her consideration of "what should be the remedy," N.T. October 8, 1997, at p. 6, that is, of what action would be necessary to make the FOP and its affected members whole. The arbitrator showed sensitivity to the City's interests by acknowledging that the 1992 demand did not plainly and expressly state a claim for out-of-class compensation and by limiting the relief on equitable grounds to commence as of the first day of the hearings in this case, when the matter was plainly stated. The Court affirms that portion of the order of the trial court that confirmed the arbitrator's conclusion that the question of the proper remedy for out-of-class work was properly before her.[4]

## III

■ The second overall issue concerns whether the arbitrator exceeded her authority by directing the City, prospectively, either to assign Internal Affairs Division Staff Inspector job functions to Staff Inspectors or to pay the applicable rate to lower-ranked individuals performing Staff Inspector functions and to bargain, upon the FOP's request, over the decision to eliminate the rank of Staff Inspector. The City contends that the decision to eliminate the position of Staff Inspector falls within the management rights clause of the Agreement, which was added by the Act 111 interest arbitration award of March

4. The City also argues that it was effectively denied its right under the Agreement and the AAA Rules to participate in the selection of the arbitrator in a meaningful manner because it might not have agreed to the selection of this arbitrator had it known that an out-of-class pay issue was involved. As the FOP notes, however, the City does not assert that it would have made some other selection. Further, once this arbitra-

tor decided on the first day of the hearings to consider the possibility of out-of-class payments, it was incumbent upon the City to raise an objection at that time if the City truly objected to having this arbitrator in particular decide that issue. The City raised and preserved an objection to consideration of out-of-class payments, but it did not object to the arbitrator.

23, 1993.[5] It notes that cases have held that the City is under no obligation to bargain over decisions that implicate its statutory management prerogatives. In *City of Philadelphia v. Pennsylvania Labor Relations Board*, 138 Pa.Cmwlth. 113, 588 A.2d 67 (1991), the Court affirmed the decision of the Pennsylvania Labor Relations Board (PLRB) that the City's decision to implement a first responder program in the fire department was a management prerogative that could be implemented unilaterally. The Court observes, however, that *City of Philadelphia* also held that the City did have an obligation to bargain over the impact off the implementation of the program upon the fire fighters' wages, hours and working conditions.

The City also cites *Fraternal Order of Police Lodge # 5*, 28 PPER ¶ 24,084 (PLRB 1997), where the PLRB held that the City was not required to bargain over its decision to reorganize the homicide unit by placing an Inspector in charge of the unit instead of a Captain and Captains in charge of the line squads instead of Lieutenants. In addition, the City refers to the principle that an arbitrator "does not have a roving commission to do what he or she believes is necessary to put everything right, to construct a better agreement." *Marple Township*, 660 A.2d at 215.

▮ The FOP responds by noting that the arbitrator referred to *Township of Upper Saucon v. Pennsylvania Labor Relations Board*, 152 Pa.Cmwlth. 530, 620 A.2d 71 (1993), which stated that the "rational relationship" test applies to determine whether something is a mandatory subject of bargaining under Act 111: "[A]n issue is deemed bargainable if it bears a rational relationship to employees' duties." *Township of Upper Saucon*, 152 Pa.Cmwlth. at 535, 620 A.2d at 73. Further, waiver of a right to bargain is not supported by general language in a management rights clause "but will be found only when the words show a clear and unmistak-

able waiver." *Id.* at 539, 620 A.2d at 76. The arbitrator in the present case concluded that general language referring to the City's authority over organizational structure did not authorize the City to completely eliminate a job classification set out in the collective bargaining agreement and to transfer the duties of that classification to lower-ranking officers. Even if the arbitrator was incorrect on this point, however, the FOP contends that this would be mere error of law, which is not subject to review in an Act 111 case under narrow certiorari.

The Court agrees with the FOP that the arbitrator's ruling on this question should be upheld. The City in the Agreement endorsed the existence of the classification of Staff Inspector, as one of only eleven specified ranks within the Police Department, and a job description specified the duties of that position. If the City were free to eliminate entire classifications at will and to announce that duties formerly performed by such positions are now the duties of lower-paid positions, the bargained-for wage rates contained in the Agreement could be rendered meaningless. Further, in *Township of Upper Saucon*, the Court noted that the test for determining whether an issue was a mandatory subject of bargaining under the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101 – 1101.2301, did not apply to police and fire collective bargaining agreements under Act 111.

The Court concluded in *Township of Upper Saucon* that police officers' right to bargain over a fundamental change made by the township in the nature of the shift system, abolishing a rotating shift arrangement that had been in use for many years, was not waived by the reserved managerial "right to schedule hours" language in the parties' agreement. The present case is analogous. Although the City of course possesses general managerial authority over the organization

---

5. The clause relating to "Management Rights" provides in pertinent part:

Matters of inherent managerial policy are reserved exclusively to the City. Except as specifically addressed in this Award and the collective bargaining agreement, matters of inherent management policy include, but are not limited to, such areas of discretion or policy as civilianization of bargaining unit member positions, as addressed in the Award, the functions of and programs of the City, standards of service, the overall budget and the organizational structure of the Police Department, and the selection and direction of personnel.

of the Police Department, a decision to eliminate an entire classification that is recognized in the Agreement goes beyond mere managerial prerogative, and it was properly held to be a mandatory subject of bargaining.[6] The arbitrator's ordering the City prospectively to fill proper positions with Staff Inspectors or to make out-of-class payments as needed is an appropriate remedy.

Accordingly, the decision of the trial court confirming the arbitrator's award is affirmed. The arbitrator did not exceed her jurisdiction in considering evidence of out-of-class work by persons performing the duties of the depleted contingent of Staff Inspectors. Further, the arbitrator did not exceed her authority in ordering compensatory payments for such out-of-class work from October 8, 1997 until the date of the award or in fashioning prospective remedies for the City's violation of the Agreement in regard to Staff Inspectors.

## O R D E R

AND NOW, this 29th day of April, 1999, the order of the Court of Common Pleas of Philadelphia County is affirmed.

---

**6.** *See also Plumstead Township v. Pennsylvania Labor Relations Board,* 713 A.2d 730 (Pa.Cmwlth. 1998) (holding that a township's unilateral termination of a longstanding policy of permitting police officers to take police vehicles home at the end of their shifts was a mandatory subject of bargaining); *City of Bethlehem v. Pennsylvania Labor Relations Board,* 153 Pa.Cmwlth. 544, 621 A.2d 1184 (1993) (holding that giving the work of a bargaining-unit sergeant to civilians in the revamping of communications center was a mandatory subject of bargaining).