402 A.2d 669

**J. L. WOLGIN, on behalf of himself and others similarly situated, and derivatively on Behalf of the State Mutual Investors, a Massachusetts unincorporated association, Appellants,**

**v.**

**STATE MUTUAL INVESTORS, State Mutual Life Assurance Co. of America, the American Group Management Corp., W. Douglas Bell, Trustee, Francis H. Dewey, III, Trustee, Roland A. Erickson, Trustee, Frederick Fedeli, Trustee, Michael Greenbaum, Trustee, Jacob Hiatt, Trustee, Bartow Kelly, Trustee, Thomas R. Mulroy, Trustee, Stewart F. Oakes, Trustee, James T. Wilcox, Trustee, Frederick Fedeli, Executor of the Estate of Richard H. Wilson, Dec'd., Trustee, and John E. Sawyer, Trustee.**

Superior Court of Pennsylvania.

Argued Dec. 5, 1978.

Decided April 20, 1979.

526

David Berger, Philadelphia, and with him Stanley R. Wolfe and Russell D. Henkin, Philadelphia, for appellants.

Lewis H. Van Dusen, Philadelphia, and with him Sarah M. Thompson, Philadelphia, for appellees State Mut. Investors, Dewey, Greenbaum, Hiatt, Kelly, Mulroy, Oakes and Sawyer.

Otis W. Erisman, Philadelphia, and with him Nicholas E. Chimicles, Philadelphia, for appellees State Mut. Life Assur. Co., America Group Management Corp., Bell, Erickson, Fedeli, etc., and Wilcox.

Before CERCONE, HESTER and HOFFMAN, JJ.

HESTER, Judge:

This is an appeal from an order of the Court of Common Pleas of Philadelphia County, dismissing appellants' complaint.

Appellant owns $76,000 worth (face value) of 6¾% subordinated convertible debentures issued by State Mutual Investors, a Massachusetts Trust Company. The action below was brought by appellant against State Mutual Investors (Investors), its Trustees, State Mutual Life Company (which formed Investors in 1970 as a Real Estate Investment Trust), and America Group Management Corporation, formed by State Mutual Life to furnish investment advice to "Investors". (The foregoing defendants, we now term "appellees").

County I of the complaint is a derivative action and charges appellees with violating the provisions of "Investors" Declaration of Trust by:

1. Investing more than 10% of Trust assets in junior mortgages and allowing Trust debts to exceed 400% of net assets;

2. violating fiduciary duties to the shareholders and debenture holders by failing to diversify Trust investments;

3. negligently causing Trust loans to be undersecured; and

4. selling stock and debentures on basis of false financial statements.

Count II, also a derivative action charges that appellees filed a false and inaccurate Form 10–K with the Securities and Exchange Commission.

Count III, a class action in favor of all holders of 6¾% debentures, alleged that the 6¾% debenture holders were improperly denied the right to join in the settlement of two Ohio suits brought against appellees.

Appellant sought three forms of relief: (1) the appointment of a receiver for the trust and supervision of its operation; (2) injunctive relief against certain parties to prevent implementation of a settlement approved by the United States District Court for the Southern District of Ohio in the cases of *Lois A. Doyle v. State Mutual Investors, et al.*, No. C–1–75–312 (filed August 21, 1975), and *Ruth A. Starr v. State Mutual Investors, et al.*, No. C–1–75–436 (filed November 28, 1975); and (3) damages in the amount of $125,000,000.00.

The two federal suits brought in Ohio against appellees basically alleged that appellees filed false financial statements, proxy statements and annual reports which showed "Investors" assets at an artificially inflated value; made improvident loans and failed to diversify investments. They also alleged various acts of self-dealing and violations of fiduciary duties by the trustees. (See Reproduced Record 52a–85a).

These suits were initiated in 1975. In July of 1976, "Investors" was unable to pay its senior bank debt[1] of

1. The basic financial structure of "Investors" was composed of four levels:

    A. Bank Loans (highest priority);

    B. 9% senior subordinated notes due November, 1980;

    C. 6¾% subordinated convertible debentures, due 1991; and

$67,000,000.00 due July 31, because of a lack of funds. Consequently, because of certain subordination provisions, "Investors" was thus unable to pay interest due on its 9% notes and 6¾% debentures.

The defaults, coupled with the prospect of many years of complex litigation, apparently provided the motivation for possible settlement of the Ohio actions. A committee was formed to work out a settlement between the defendants and the various claimants.

While discovery, pursuant to the settlement, was continuing, appellant, on May 3, 1977, moved to intervene in the Ohio action on behalf of all 6¾% subordinated convertible debenture holders. At the same time, appellant initiated this action in Philadelphia Common Pleas Court.

Appellant's petition to intervene in the Ohio action, was denied on June 7, 1977. (However, appellant was permitted to participate in discovery by cross-examining witnesses with reference to 6¾% debenture holders). The denial of the petition to intervene was appealed to the Court of Appeals for the Sixth Circuit. On July 5, 1977, the settlement arrived at by the parties (see Supplemental Reproduced Record, pgs. 14b–39b) to the two aforementioned suits was approved by Order of the Federal District Court for the Southern District of Ohio. Appellant appealed this order to the Court of Appeals.

In addition to the actions taken above, appellant filed a complaint in Federal District Court for the Southern District of Ohio on September 21, 1977, alleging the court approved settlement was the product of fraud and conspiracy and sought to have the settlement set aside. Simultaneously, appellant filed in District Court, a motion under Federal Rules of Civil Procedure 60(b)to have the settlement order set aside because it was procured by fraud.

Meanwhile, back in Pennsylvania, appellees removed the instant action to Federal District Court for the Eastern

D. 1.25 million outstanding shares stock (now approximately 3 million shares).

District of Pennsylvania. However, by order of September 30, 1977, this action was remanded to the Philadelphia Common Pleas Court.

In Common Pleas Court, the Court heard argument on preliminary objections filed by appellees. By order and opinion dated March 22, 1978, the lower court dismissed both the preliminary objections of appellee and the complaint of appellant. The court refused to accept jurisdiction in the matter holding that principles of "Comity" prevented it from interfering in actions taken by federal courts, and since this action and the suits settled in Ohio were virtually the same, it would refuse jurisdiction regardless of the fact that appellant claimed violations of the Pennsylvania Securities Act (70 P.S. § 1–101, et seq.). The court also reasoned that the relief requested by appellant would, if granted, violate the "internal affairs doctrine", i. e., Pennsylvania courts will not take jurisdiction for purposes of regulating or interfering with the internal management of a foreign corporation.

From the dismissal of the complaint does this appeal arise.

We review to determine whether the action of the lower court in dismissing the complaint was proper.

The lower court, in dismissing the complaint, basically refused to exercise its jurisdiction, based on principles of "comity" and secondarily on the "internal affairs" doctrine.

Our consideration leads us to the conclusion that the lower court correctly dismissed the complaint.

"Comity", used in the legal sense, is not a rule of law, but a principle, given effect out of deference and respect for the actions of courts of other jurisdictions. Technically it means "where one authority gives way to another". See Black's Law Dictionary.

The lower court exercised its discretion and refused to take jurisdiction of the cause of action pleaded by appellants. Its concern was the relationship between the federal-state judiciary; that certain actions, concerning parties from a wide variety of geographic areas are better left to the

federal courts for resolution. The court felt that any relief it *could* provide would hopelessly interfere with the resolution effected in the Ohio Federal Court. Thus, the lower court declined to accept jurisdiction.

An examination of the action here and the actions consolidated in Ohio supports the lower court's finding.

The suits in Ohio were "derivative actions"—brought by shareholders on behalf of the trust. The action here also involves a "derivative action" (Counts I and II) as well as a "class action" (Count III).

Appellant does not contest the fact that the actions in Ohio and the derivative counts here are similar. Indeed, upon comparison of the two complaints (pages 3a–49a Reproduced Record and pages 52a–85a Reproduced Record), it is clear that the allegations of wrongdoing and misfeasance and the relief requested in both are almost identical.[2] It appears that, except for County III, appellant could have used the complaint filed in Ohio.

The cases in Ohio, however, did not go to trial; they were settled. Clearly, appellant, and those he would seek to represent, is not satisfied with the settlement as it pertains to the class of 6¾% debenture holders. He claims that the higher priority note holders (9%) improperly settled the derivative action and unfairly compromised the claims of the 6¾% debenture holders. We, however, are not here concerned with the merits of the settlement arrived at in Ohio. Our review, necessarily, involves only a determination of whether we have any interests to protect that were not litigated (or settled in Ohio).

Appellant would have us enjoin the parties (appellees) for effecting the settlement approved by the Federal Court in Ohio, monitor the trust operation by appointment of a receiver, and award damages to the class of 6¾% debenture holders in the amount of $125,000,000.00.

**2.** We note that appellant's complaint generally alleges violations of the Penna. Securities Law, however, nowhere does he allege any specific violation of particular sections of the act.

Our review of the proceedings in Ohio leads us to believe that any action we could take with respect to the relief the appellant requests would improperly interfere with the action of that court. We see no independent right protected by Pennsylvania statutes or case law that merits our interference in this matter.[3]

█ Clearly we have no power to enjoin a settlement arrived at and approved in Federal Court. In *Donovan v. City of Dallas*, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964) (where Texas Supreme Court issued an injunction prohibiting plaintiff in Federal Court action from pursuing that action), the United States Supreme Court (per Justice Black) held that state courts are completely without power to restrain federal court proceedings in *in personam* actions.

Clearly this forbids injunctions which seek to enjoin parties from effectuating a decree or settlement arrived at in federal court, e. g. *Riggs v. Johnson County*, 6 Wall. 166, 73 U.S. 166, 18 L.Ed. 768 (1867) where federal court issued an injunction ordering a local official to levy a certain tax and the State Supreme Court enjoined that same act, the U. S. Supreme Court struck the state injunction holding that state courts have no power to restrain actions ordered by national courts. And *Central National Bank v. Stevens*, 169 U.S. 432, 18 S.Ct. 403, 42 L.Ed. 807 (1898) where the U. S. Supreme Court struck a state court injunction which enjoined execution of a federal judgment. The court considered the state action a clear interference with a federal proceeding. See also *General Atomic v. Felter*, 436 U.S. 493, 98 S.Ct. 1939, 56 L.Ed.2d 480 (1978).

█ Thus, following the above cases, the lower court could not have granted the appellant's request to enjoin the settlement arrived at in Ohio.

We are of the further opinion that the court could not have granted the other relief requested. The policy of our Supreme Court in this area was enunciated in a short opinion in *In re: Estate of Girard*, 423 Pa. 297, 224 A.2d 761

**3.** See footnote # 2.

(1966) (where a petition was filed with the court requesting a clarification of its earlier opinions relating to the Girard Trust, in light of a recent Federal District Court ruling that construed a Pennsylvania Statute contrary to the Supreme Court's 1956 and 1958 holdings):

"Due regard for the proper administration of our federal-state system of dual judicial tribunals suggests that it would be highly inappropriate for this Court to entertain the petition for clarification, since the district court's decision is currently on appeal before the United States Court of Appeals for the Third Circuit." 423 Pa. at 299, 224 A.2d at 761.

We concede that the case above is not at all factually similar to our case. However, it does illustrate the point that Pennsylvania courts will defer to the Federal Courts whenever necessary to maintain harmony. There (in *Girard*), the Supreme Court had no wish to interfere in the decision of the District Court. The District Court had jurisdiction and issued its order; the Supreme Court, although having a great interest in the case, refused to interfere while it was still pending in the Federal Judicial System.

 Appellant, however, argues that this case is governed by theories of concurrent jurisdiction. That doctrine permits both federal and state courts to proceed concurrently with a case until one reaches judgment. We make no attempt to dispute the existence or validity of the principle. See e. g. 20 Am.Jur.2d § 135. The facts here, however, hardly presented a situation where an exercise of "concurrent jurisdiction" was called for.

The Ohio suits were initiated in Ohio in 1975. Appellant did not commence this suit until 1977. By the time the lower court in this case was called to rule upon the objections presented below, the Ohio case had been settled. In addition, appellant had two appeals, upon the same cause of action presented here, pending before the Sixth Circuit Court of Appeals and also a motion before the District Court and another original action pertaining to this set of facts,

pending in Ohio Federal District Court. Thus the Pennsylvania Court, had it decided to allow this action to proceed to trial, would have been in a position where it was just touching the surface of the case while the Federal actions were practically finalized.

We in no way seek to denigrate the merits of appellant's arguments. However, we consider that the appellant's rights, with regard to the within set of facts, are, and should remain, in the custody of the Federal Court in Ohio.

■ The derivative counts were pursued in Ohio and settled—appellant has appealed this settlement to the Sixth Circuit Court. If it was fraudulent—certainly they (the Sixth Circuit) are competent to determine that. The rights of the 6¾% debenture holders (class action count) were adjudicated by the settlement. If that class was wrongly excluded from the settlement or not properly compensated by the settlement, the Sixth Circuit will be competent to judge this—as it is also on appeal.

We can see no justification for a Pennsylvania court to become involved in this litigation at this time. The relief we are asked to grant appellant would severely interfere with an ongoing Federal Court action.

We believe this case to be a classic example of when the principle of "comity" should be invoked. Thus we affirm the dismissal of the complaint.[4]

We note that with the dismissal of this action, we do not attempt to limit appellant's future actions in Pennsylvania. Certainly after the Federal Court in Ohio disposes of the variety of actions *there*, it is possible that appellant may have certain rights *here* with regard to this set of facts. Our holding here is only that we think the lower court's action in dismissing the complaint *now*, was proper, since the precise issue was being litigated in Ohio.

Order of the lower court affirmed.

4. The lower court also decided that to exercise jurisdiction in this case would violate the "Internal Affairs Doctrine". See e. g., *Plum v. Tampax*, 399 Pa. 553, 160 A.2d 549 (1960). We need not discuss this for we believe the above to be sufficient to support the refusal to accept jurisdiction.