Wally YARACS, Appellant,

v.

SUMMIT ACADEMY and C.S.C. Academy, Inc., The Township of Summit, Butler County.

No. 2448 C.D.2003.

Commonwealth Court of Pennsylvania.

Argued Feb. 3, 2004.
Decided March 2, 2004.

---

5. Landowner alleges in his affidavit that he first became aware of problems with building on the lot in 1970. (R.R. at 111b).

Christine M. Nebel, Butler, for appellant.

James H. Norris, Pittsburgh, for appellee.

BEFORE: FRIEDMAN, J., LEADBETTER, J., and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Wally Yaracs (Yaracs) appeals from the January 14, 2003, order of the Court of Common Pleas of Butler County (trial court), which sustained the preliminary objections filed by Summit Academy and C.S.C. Academy, Inc. (together, the Academy) and dismissed Yaracs' amended petition for declaratory judgment (Petition) based on a lack of subject matter jurisdiction. We affirm.

In 1996, the Academy purchased property in Summit Township (Township) for use as a residential juvenile correction facility. At the time, the Township had no zoning ordinance pertaining to land use. However, the Summit Township Board of Supervisors (Supervisors) subsequently enacted a zoning ordinance (Ordinance) that ostensibly prohibited the Academy's proposed use of the property; consequently, the Township sent a Notice of Violation to the Academy. Following an appeal by the Academy, the Summit Township Zoning Hearing Board (Board) ultimately dismissed the Notice of Violation, concluding that the Academy's use of the property as a residential juvenile correction facility was a legal nonconforming use with the constitutional right to expand. The Township appealed this decision to the trial court, which affirmed the Board. The Township later appealed, then withdrew its appeal, to the Commonwealth Court, and the trial court's decision became final.

On March 13, 2000, the Academy filed Building Permit Application No. 24082 (Application 24082), seeking to construct two dormitories on its property. The Township's Zoning Officer denied Application 24082, and the Academy appealed the denial to the Board. (Petition at ¶ 8.) Meanwhile, the Township voted to amend the Ordinance, limiting the number of residents in certain institutional uses, such as juvenile detention or correctional facilities, to 350 residents. (Petition at ¶ 14.) A hearing on the appeal from the denial of Application 24082 was held before the Board on January 21, 2002. Yaracs was one of nine Township residents that entered an appearance. (Petition at ¶¶ 10–11.)

On March 28, 2002, prior to the Board's decision regarding Application 24082, the Academy filed a civil rights action against the Township in federal district court, alleging, *inter alia*, that the Township engaged in a pattern and practice of arbitrary and irrational government action motivated by bias, bad faith and the intent to harass the Academy because of its use of the property as a residential juvenile correctional facility. (Petition at ¶¶ 1–6, 9, 12.)

On April 10, 2002, the Board met and issued a decision on the Academy's appeal from the denial of Application 24082, holding that the building permit was deemed approved in favor of the Academy because the Zoning Officer's decision had been rendered 106 days after Application 24082 was

filed. The Board further found that, even if the Academy were not entitled to a deemed approval, the reasons for denial given by the Zoning Officer were "inadequate and erroneous." (Petition at ¶ 13.)

The parties subsequently engaged in settlement negotiations to resolve the six-year-long dispute between the Township and the Academy. During these negotiations, the Supervisors made a settlement proposal to the Academy and prepared a Resolution, authorizing execution of a written settlement agreement (Agreement) and a Consent Order incorporating the Agreement, to settle the federal civil rights litigation between the parties. Among other things, the Agreement called for the approval of Application 24082 and issuance of the Academy's disputed building permit; the Agreement also included a schedule allowing the Academy to expand its population to 1,200 residents by the year 2013.

On May 1, 2002, at a public meeting of the Township Supervisors, Supervisor Harold Schnur (Supervisor Schnur) moved to adopt the Resolution/Agreement to settle the federal lawsuit. The Resolution passed; two Supervisors, including Supervisor Schnur, voted in favor of the Resolution and one Supervisor abstained. (Petition at ¶¶ 15–16.) On May 2, 2002, the Consent Order incorporating the Agreement was entered by the federal district court, settling the civil rights litigation between the parties.[1] (Petition at ¶¶ 17, 30–32; R.R. at 40a–49a.)

On May 31, 2002, Yaracs filed a petition for declaratory judgment,[2] to which the Academy filed preliminary objections. On July 12, 2002, Yaracs filed his amended Petition for declaratory judgment in the trial court, requesting that the trial court declare void the Agreement adopted by the Township Supervisors on May 1, 2002. Yaracs maintains that, through the Agreement, the Township effectively grants an illegal zoning Ordinance amendment or variance.[3] Yaracs further maintains that

---

[1]. On May 10, 2002, Yaracs filed an appeal with the trial court from the April 10, 2002, decision of the Board. On February 14, 2003, the trial court granted a motion filed by the Academy to quash the appeal, determining that Yaracs' appeal was rendered moot by the May 2, 2002, entry of the federal Consent Order incorporating the Agreement. Yaracs appealed to this court from the trial court's order, and we affirmed. (See Petition at ¶¶ 20–21, 29.)

[2]. On that same date, Yaracs also filed a petition to intervene in the settled federal action and a petition to vacate the Consent Order. (Petition at ¶¶ 42–44.) The district court denied Yarac's petition to intervene, (R.R. at 187a–98a), and, with emphasis on the untimeliness of the petition, the Court of Appeals for the Third Circuit affirmed the district court by order dated June 5, 2003. A petition for rehearing filed by Yaracs was denied on July 11, 2003. Recently, the United States Supreme Court denied Yaracs' petition for writ of certiorari. *Yaracs v. Summit Academy*, —

U.S. ——, 124 S.Ct. 1048, 157 L.Ed.2d 891 (2004).

Also on May 31, 2002, Yaracs filed an appeal to the Board from the Supervisors' decision to grant the Permit to the Academy pursuant to the Agreement and Consent Order. Following a public hearing on July 24, 2002, the Board determined that it was without jurisdiction to hear Yaracs' appeal. By order dated January 16, 2003, the trial court affirmed the Board decision. Yaracs appealed the trial court's decision to this court, and we also affirmed the Board.

[3]. Yaracs contends that the Agreement effectively amends the Township Ordinance or grants a variance to the Academy by allowing the Academy to house 1,200 juvenile offenders at the site, although similarly situated property owners are limited by the Ordinance to having 350 juvenile residents. Yaracs maintains that the amendment of a zoning ordinance or the grant of a variance require prior advertising, public notice and a public hearing; therefore, the Academy and the

the Agreement is invalidated by the actions of Supervisor Schnur, who Yaracs alleges was required to abstain from voting on the Agreement due to a conflict of interest in the matter.

 On August 1, 2002, the Academy filed preliminary objections to Yaracs' amended Petition, seeking dismissal of the Petition on the grounds that: (1) the trial court lacked subject matter jurisdiction, (P.O.s at ¶¶ 18–23); and/or (2) Yaracs' claims are legally insufficient, (P.O.s at ¶¶ 25–33). (R.R. at 131a–36a.) Following oral argument, the trial court issued an opinion and order, dated January 14, 2003, sustaining the preliminary objections based on a lack of subject matter jurisdiction over Yaracs' Petition. Specifically, the trial court stated that it has "no jurisdiction to hear any matters concerning this [federal] Consent Order." (Trial ct. op. of January 14, 2003, at 4, Yaracs' brief at Appendix 1.)[4] Yaracs now appeals to this court,[5] arguing that the trial court erred in dismissing the Petition.

 According to Yaracs, the trial court had jurisdiction to void the Agreement between the Academy and the Township notwithstanding the fact that the Agreement is incorporated in a federal Consent Order. We disagree. The Agreement here is incorporated into the federal Consent Order, which finally settled the federal civil rights action brought by the Academy against the Township. Because a determination voiding the Agreement clearly would contravene the Consent Order, the trial court is without authority to make such a determination. *Wolgin v. State Mutual Investors*, 265 Pa.Super. 525, 402 A.2d 669 (1979).

In *Wolgin*, shareholder derivative suits were initiated in federal court and while the suits were pending, a shareholder commenced suit in common pleas court seeking injunctive relief to prevent implementation of a settlement agreement approved by the district court. The common pleas court refused to accept jurisdiction in the matter, applying the principle of comity to justify dismissal of the complaint. Our superior court affirmed, concluding that a state court has no power to enjoin a settlement arrived at and approved in federal court. *Id.* The court cited *Donovan v. City of Dallas*, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964), in which the United States Supreme Court held that state

---

Township circumvented the law by adopting the Agreement without following these procedures. (Petition at ¶¶ 23–26.)

4. The trial court issued a subsequent opinion on March 5, 2003, pursuant to Pa. R.A.P. 1925(a), to address Yaracs' complaint that the trial court had ruled on its jurisdiction to overturn the *Consent Order* when what actually was before the trial court was Yaracs' request to declare the *Agreement* void. The trial court reminded Yaracs that the Agreement was incorporated into the Consent Order and stated, "Thus in seeking to have this Settlement Agreement declared void, [Yaracs] sought to have this Court declare a portion of the Consent Order void and enjoin an agreement arrived at and approved by Federal Court. State courts are clearly without power to take such actions." (Trial ct. op. of

March 5, 2003, at 2, Yaracs' brief at Appendix 1.)

5. Where a case is dismissed at the preliminary objections stage on issues of law, the appellate scope of review is plenary. *Belser v. Rockwood Casualty Insurance Co.*, 791 A.2d 1216 (Pa.Super.2002). When reviewing an order granting preliminary objections in the nature of a demurrer, all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom must be accepted as true. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling the demurrer. *Price v. Brown*, 545 Pa. 216, 680 A.2d 1149 (1996).

courts are completely without power to restrain federal court proceedings in *in personam* actions. The court, in *Wolgin*, then determined that the precedent set forth in *Donovan* clearly "forbids injunctions which seek to enjoin parties from effectuating a decree or settlement arrived at in federal court." *Wolgin*, 402 A.2d at 673. In addition, the court noted that Pennsylvania courts will defer to the Federal Courts whenever necessary to maintain harmony. *Id.*

Yaracs attempts to distinguish *Wolgin* on the ground that the state suit in that case was instituted *subsequent* to the federal court action, whereas, here, the Academy filed its federal suit at a time when the issue of the Academy's building Permit already was under consideration by the Board in state court proceedings. However, at the time the Township and the Academy *entered* the Agreement, there was no pending state action. Yaracs *subsequently* filed his Petition seeking to have the trial court void the Agreement incorporated into the Consent Order. As the trial court here correctly held, once the Consent Order had been entered, a conflicting state order was impermissible. *Wolgin.*

■ Nevertheless, Yaracs argues that, in accordance with the principle of comity, as discussed in *Wolgin*, the federal district court should have deferred action on the Academy's lawsuit until all state court proceedings related to Application 24082 were concluded. We disagree.

■ " 'Comity' used in the legal sense, is not a rule of law, but a principle, given effect out of deference and respect for the actions of courts of other jurisdictions." *Id.* at 672. The doctrine of comity teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of litigation, have had an opportunity to pass upon the matter. *Lambert v.*

*Blackwell*, 134 F.3d 506 (3d Cir.1997). A question of comity arises when there is "tension . . . between courts and/or agencies having concurrent jurisdiction over the same matter." *Pennsylvania State Troopers' Association v. Pennsylvania Labor Relations Board*, 671 A.2d 1183, 1187 (Pa.Cmwlth.), *appeal denied*, 545 Pa. 657, 680 A.2d 1164 (1996).

In *Wolgin*, the Superior Court held that the common pleas court properly invoked the principle of comity to justify dismissing a complaint where *a virtually identical cause of action* was pending on appeal in federal court, and the relief sought in the state court action would severely interfere with the ongoing federal action. However, in the present case, the matter brought before the federal district court was *not* the same as the state action on the building permit dispute. The Academy's action before the federal district court alleged a violation of the Academy's rights to equal protection and due process of law, over which the district court had original jurisdiction. Thus, Yaracs' argument that the federal court action should have been deferred until state court proceedings on the building permit had ended is without merit.

■ Moreover, in *Morning Call, Inc. v. Lower Saucon Township*, 156 Pa. Cmwlth. 397, 627 A.2d 297 (1993), this court recognized that where, as here, a matter has been settled in federal court by order in accordance with Fed.R.Civ.P. 41(a)(2), the federal court retains continuing jurisdiction, and the state court lacks jurisdiction. *Morning Call* at 297 n. 4. Consequently, any attack by Yaracs on the validity of the Consent Order must be addressed before that same federal court. *O'Burn v. Shapp*, 70 F.R.D. 549 (E.D.Pa.), *aff'd*, 546 F.2d 417 (3d Cir.1976). In fact, by filing his petition to intervene and vacate the Consent Order, Yaracs attempted to obtain relief in the federal district court.

However, as indicated, the district court denied Yaracs' petition, and Yaracs' appeals from this decision all have failed. Yaracs' present attempt to collaterally attack the Consent Order in state court likewise must fail.

 Before this court, Yaracs also renews his argument that he did not ask the trial court to declare the *Consent Order* void but, rather, simply asked the trial court to make a legal determination as to the validity of the *Agreement* pursuant to Pennsylvania law. Yaracs stresses that, in seeking this relief, he did not request the trial court to overturn a federal Consent Order. He states, "Ultimately, what the Federal Court may do with such a decision is up to the Federal Court." (Yaracs' brief at 16.) Yaracs' argument clearly is unsound. As recognized by the trial court, voiding the Agreement would necessarily void a portion of the Consent Order and, thus, enjoin the federally approved settlement. As stated, state courts cannot do this, *Wolgin; General Atomic Co. v. Felter,* 436 U.S. 493, 98 S.Ct. 1939, 56 L.Ed.2d 480 (1978), and, therefore, the trial court properly dismissed Yaracs' Petition.[6]

### ORDER

AND NOW, this 2nd day of March, 2004, the order of the Court of Common

---

6. Although we hold that the trial court properly dismissed the Petition based on a lack of subject matter jurisdiction, we note our agreement with the Academy that Yaracs' Petition also failed to state a claim justifying his request for declaratory relief. Yaracs first claimed that the Agreement should be declared void due to a purported illegal zoning Ordinance amendment and/or a purported illegal variance granted by the Township. However, Pennsylvania courts have long held that court approved settlements of zoning cases are lawful. *See Council of Borough of Monroeville v. Al Monzo Construction Co.,* 5 Pa.Cmwlth. 97, 289 A.2d 496 (1972). Further, courts recognize that such settlements are distinct from zoning variances even though such settlements may result in a departure from the ordained zoning pattern. *Summit Township Taxpayers Association v. Summit Township Board of Supervisors,* 49 Pa.Cmwlth. 459, 411 A.2d 1263 (1980) (holding that court-approved settlements of zoning disputes are favored and lawful and are distinct from grants of variances).

According to Yaracs, Supervisor Schnur, who made the motion to ratify, and voted in favor of, the proposed Agreement, had a conflict of interest with respect to the matter because, in the past, Schnur farmed land that now is owned by the Academy, and Schnur's son continues to farm fifteen to eighteen acres of the Academy's property. Yaracs maintains that, pursuant to section 1103(j) of the Public Official and Employee Ethics Act (Ethics Act), 65 Pa.C.S. § 1103(j), Supervisor Schnur was required to disclose the conflict of interest and abstain from voting. Yaracs contends that without Supervisor Schnur's vote, the Agreement would not have passed. (Petition at ¶¶ 33–41.) Moreover, Yaracs asserts that, because of Supervisor Schnur's Ethics Act violation, the trial court had jurisdiction to void the Agreement pursuant to section 1103(f) of the Ethics Act, 65 Pa.C.S. § 1103(f). Yaracs' argument is fatally flawed.

To have a conflict of interest under the Ethics Act, the individual with the alleged conflict must have used or attempted to use the authority of his office for private pecuniary benefit for himself or a member of his immediate family. 65 Pa.C.S. § 1102. Here, Yaracs, has alleged no facts to show how Supervisor Schnur's vote would advance his pecuniary interests in any measurable way. Moreover, even assuming that a conflict of interest did exist, the Ethics Act does not authorize a court to void the public official's vote as one of the enumerated punishments for violating the conflict of interest provision. *Salem Township Municipal Authority v. Township of Salem,* 820 A.2d 888 (Pa.Cmwlth. 2003). Finally, contrary to Yaracs' assertion, section 1103(f) of the Ethics Act did not give the court jurisdiction to void the Agreement. Section 1103(f) of the Ethics Act prohibits the making of a contract between the *public official* and the governmental body for the acquisition, use or disposal by the governmental body, for services, supplies, land or other property. 65 Pa.C.S. §§ 1102 and 1103(f). That does not describe this Agreement between the *Academy* and the Township.

Pleas of Butler County, dated January 14, 2003, is hereby affirmed.